[No. B120363. Second Dist., Div. Four. Feb. 16, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
KEITH M. TERRELL, Defendant and Appellant.

**COUNSEL**

Thomas F. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, John R. Gorey and Jacques Garden, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**VOGEL (C. S.), P. J.**—Keith M. Terrell appeals from the judgment entered following a court trial that resulted in his conviction of possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a); count 1) and unauthorized possession of a hypodermic syringe (Bus. & Prof. Code, § 4140; count 2). He was sentenced to prison for 16 months on count 1. The court awarded him 172 days' precommitment credit and ordered him to pay a $200 restitution fine (Pen. Code, § 1202.4, subd. (b))[1] and a $50 laboratory analysis fee (Health & Saf. Code, § 11372.5).

Appellant contends his suppression motion (§ 1538.5) made at the preliminary hearing was erroneously denied. Alternatively, he contends he was deprived of effective assistance of counsel because his counsel's failure to renew the challenge before the superior court forecloses review of his claim of error on appeal.

Respondent contends that the court erred in calculating appellant's precommitment credit award and in failing to impose a $200 parole revocation fine (§ 1202.45), state and county penalty assessments (§ 1464; Gov. Code, § 76000), and the requirement that appellant register as a narcotics offender (Health & Saf. Code, § 11590). Respondent further contends the judgment and abstract of judgment must be corrected to reflect these items.

We find respondent's position to be meritorious with respect to the precommitment credit award, the parole revocation fine, and the state and

---

[1] All further section references are to the Penal Code unless otherwise indicated.

county penalty assessments. We further find, contrary to respondent's claim, modification of the judgment to reflect the narcotics offender registration requirement is not warranted.

We hold the sentencing court commits jurisdictional error when it fails to impose a parole revocation fine (§ 1202.45) and the requisite state and county penalty assessments (§ 1202.4, subd. (a)(2); Gov. Code, § 76000; see also § 1464). We further hold the abstract of judgment must reflect the imposition of these mandatory matters.

We also hold Health and Safety Code section 11590 et seq. (narcotics offender registration statute) imposes a duty on a qualifying narcotics offender to comply with its registration provisions but does not impose a concomitant duty on the sentencing court to require the offender to do so. Inasmuch as the court is under no obligation to order the offender to register, the omission of a narcotics offender registration requirement in the judgment does not result in the proscribed "unauthorized sentence" which would require modification of the judgment.

FACTUAL SUMMARY

Viewed in accordance with the usual rules on appeal (*People* v. *Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103]), the evidence established that on October 28, 1997, at 3:30 p.m., Los Angeles Police Officer Frank Trevino, who was accompanied by his partner, Officer Day, observed appellant and two men seated on a park bench in the vicinity of 51st Street and Avalon in Los Angeles County. One of those two men appeared to be under the influence of a controlled substance. After engaging appellant in a brief conversation, Officer Trevino asked appellant whether he had any identification. Appellant responded by producing a California driver's license. Officer Trevino placed appellant under arrest after a "wants and warrants" check revealed an outstanding warrant. A search of appellant's fanny pack produced a hypodermic syringe which contained .22 milliliter of heroin.

Appellant testified he was standing in the background behind the park bench and walked over to the police car when summoned along with four other individuals by an officer. He denied the fanny pack was his and testified that he only learned about it at the police station. He denied possessing any heroin at the time of his arrest.

DISCUSSION

1. *Claim of Arrest Error Forfeited by Failure to Renew Challenge in Superior Court*

■ Appellant contends the court erred in denying his suppression mo-- tion at the preliminary hearing because the officer had no reasonable suspi- cion appellant was engaged in any criminal activity, and thus, his arrest was the product of an illegal detention. We find he has failed to preserve his claim of error for appellate review.

The record reflects the magistrate denied his suppression motion at the preliminary hearing on the ground appellant's arrest was the product of a consensual encounter. Appellant did not renew his challenge to the validity of his arrest in the superior court either by making a suppression motion (§ 1538.5) or a dismissal motion (§ 995) for review of the magistrate's ruling. His failure to renew his challenge in the superior court precludes appellate review of his claim of error because ". . . it would be wholly inappropriate to reverse a superior court's judgment for error it did not commit and that was never called to its attention." (*People* v. *Lilienthal* (1978) 22 Cal.3d 891, 896 [150 Cal.Rptr. 910, 587 P.2d 706].)

2. *No Ineffective Assistance of Counsel Shown*

Appellant contends he was deprived of effective assistance of counsel because his counsel's failure to challenge his arrest in the superior court constitutes forfeiture of his claim of arrest error on appeal. We find he has failed to carry his burden.

■ "The burden of proving ineffective assistance of counsel is on the defendant." (*People* v. *Babbitt* (1988) 45 Cal.3d 660, 707 [248 Cal.Rptr. 69, 755 P.2d 253].) "To establish a violation of the constitutional right to effective assistance of counsel, a defendant must show both that his coun- sel's performance was deficient when measured against the standard of a reasonably competent attorney and that counsel's deficient performance resulted in prejudice to defendant in the sense that it 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. . . .' " (*People* v. *Kipp* (1998) 18 Cal.4th 349, 366 [75 Cal.Rptr.2d 716, 956 P.2d 1169], citations omitted.)

"Counsel has no duty to make his client happy by interposing useless suppression motions." (*People* v. *Turner* (1992) 7 Cal.App.4th 1214, 1219 [10 Cal.Rptr.2d 358].) Moreover, "[a] defense counsel is not required to

make futile motions or to indulge in idle acts to appear competent." (*People v. Torrez* (1995) 31 Cal.App.4th 1084, 1091 [37 Cal.Rptr.2d 712].) Reversal of convictions on the ground of inadequate counsel is mandated only if the record affirmatively reveals no rational tactical purpose for his or her act or omission. (*People v. Zapien* (1993) 4 Cal.4th 929, 980 [17 Cal.Rptr.2d 122, 846 P.2d 704]; accord, *People v. Bradford* (1997) 14 Cal.4th 1005, 1052 [60 Cal.Rptr.2d 225, 929 P.2d 544].)

■ Mindful of these principles, we find appellant has failed to carry his burden. The record does not reveal the reason or reasons why appellant's attorney did not renew his challenge to the validity of appellant's arrest in the superior court, and he was not asked to explain his omission of such a challenge.

■ "If the record contains no explanation for the challenged behavior, an appellate court will reject the claim of ineffective assistance 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.' . . ." (*People v. Kipp, supra,* 18 Cal.4th at p. 367, citation omitted.)

The record discloses a rational reason why the challenge was not renewed in the superior court. It would have been futile.

■ "Police contacts with individuals may be placed into three broad categories ranging from the least to the most intrusive: consensual encounters that result in no restraint of liberty whatsoever; detentions, which are seizures of an individual that are strictly limited in duration, scope, and purpose; and formal arrests or comparable restraints on an individual's liberty. (*Wilson v. Superior Court* (1983) 34 Cal.3d 777, 784 . . . ; *In re James D.* (1987) 43 Cal.3d 903, 911-912 . . . .) Our present inquiry concerns the distinction between consensual encounters and detentions. Consensual encounters do not trigger Fourth Amendment scrutiny. (*Florida v. Bostick* (1991) 501 U.S. 429, 434 . . . .) Unlike detentions, they require no articulable suspicion that the person has committed or is about to commit a crime. (*Wilson v. Superior Court, supra,* 34 Cal.3d at p. 784.)

■ "The United States Supreme Court has made it clear that a detention does not occur when a police officer merely approaches an individual on the street and asks a few questions. (*Florida v. Bostick, supra,* 501 U.S. at p. 434 . . . .) As long as a reasonable person would feel free to disregard the police and go about his or her business, the encounter is consensual and no reasonable suspicion is required on the part of the officer. Only when the officer, by means of physical force or show of authority, in some manner

restrains the individual's liberty, does a seizure occur. (*Ibid.*; *Wilson* v. *Superior Court, supra,* 34 Cal.3d at pp. 789-790.) '[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.' (*Florida* v. *Bostick, supra,* 501 U.S. at p. 439 . . . .) This test assesses the coercive effect of police conduct as a whole, rather than emphasizing particular details of that conduct in isolation. (*Michigan* v. *Chesternut* (1988) 486 U.S. 567, 573 . . . .) Circumstances establishing a seizure might include any of the following: the presence of several officers, an officer's display of a weapon, some physical touching of the person, or the use of language or a tone of voice indicating that compliance with the officer's request might be compelled. (*United States* v. *Mendenhall* (1980) 446 U.S. 544, 554 . . . (opn. of Stewart, J.); *In re James D., supra,* 43 Cal.3d at p. 913, fn. 4.) The officer's uncommunicated state of mind and the individual citizen's subjective belief are irrelevant in assessing whether a seizure triggering Fourth Amendment scrutiny has occurred. (*In re Christopher B.* (1990) 219 Cal.App.3d 455, 460 . . . .)" (*In re Manuel G.* (1997) 16 Cal.4th 805, 821 [66 Cal.Rptr.2d 701, 941 P.2d 880].)

■ The totality of circumstances surrounding appellant's arrest reveals that appellant's initial encounter with the police was consensual, including appellant's spontaneous and voluntary action in handing Officer Trevino his driver's license. At no time did he ask the officer for his driver's license back. During the entire encounter, which lasted about three minutes, neither Officer Trevino nor his partner, by words or conduct, indicated that appellant was not free to leave. No reasonable inference therefore could be drawn that the encounter was a detention rather than a consensual encounter. Appellant's counsel therefore had no factual basis for challenging the validity of the arrest as the product of an illegal detention, i.e., the temporary seizure of appellant without a reasonable suspicion that criminal activity was afoot and appellant was involved. (See, e.g., *People* v. *Bouser* (1994) 26 Cal.App.4th 1280, 1282-1283, 1287-1288 [32 Cal.Rptr.2d 163].)

### 3. *Modification of Precommitment Credit Award Warranted*

Respondent contends the court erred in calculating appellant's precommitment award in that he was entitled only to 56 days' conduct credit rather than 57 days' credit. We agree.

Appellant was arrested on October 28, 1997. On February 19, 1998, he was sentenced and awarded a total of 172 days of precommitment credit,

consisting of 115 days' actual custody and 57 days' conduct credit. The court erred. Appellant was entitled only to a total of 171 days' of precommitment credit, consisting of 115 days' actual custody and 56 days' conduct credit. (See, e.g., *People* v. *Guillen* (1994) 25 Cal.App.4th 756, 764 [31 Cal.Rptr.2d 653]; *People* v. *King* (1992) 3 Cal.App.4th 882, 886 [4 Cal.Rptr.2d 723]; *People* v. *Smith* (1989) 211 Cal.App.3d 523, 527 [259 Cal.Rptr. 515].) We therefore modify the judgment accordingly.

### 4. *Parole Revocation Fine Mandatory*

■ Respondent contends the judgment must be modified to reflect a parole revocation fine in the same amount as the restitution fine. We agree.

Where the "sentence includes a period of parole, the court shall at the time of imposing the restitution fine pursuant to subdivision (b) of Section 1202.4, assess an additional restitution fine the same amount as that imposed pursuant to subdivision (b) of Section 1202.4. This additional restitution fine shall be suspended unless the person's parole is revoked." (§ 1202.45.)

Appellant was sentenced to prison for 16 months. He was therefore subject to "a period of parole." (§§ 1202.45, 3000, subd. (b)(1).) At sentencing, however, no discussion was held regarding imposition of a parole revocation fine (§ 1202.45), and that fine was not imposed.

"[A] sentence is generally 'unauthorized' where it could not lawfully be imposed under any circumstances in the particular case." (*People* v. *Scott* (1994) 9 Cal.4th 331, 354 [36 Cal.Rptr.2d 627, 885 P.2d 1040].) "[T]he 'unauthorized sentence' concept constitutes a narrow exception to the general requirement that only those claims properly raised and preserved by the parties are reviewable on appeal." (*Ibid.*)

We further conclude the failure of the sentencing court to impose the parole revocation fine (§ 1202.45), which is mandatory, results in an "unauthorized sentence" in excess of the court's jurisdiction, which issue may be raised in the first instance on appeal. (Accord, *People* v. *Hong* (1998) 64 Cal.App.4th 1071, 1084 [76 Cal.Rptr.2d 23].)

Where no restitution fine was imposed and the matter must be remanded for the sentencing court to exercise its discretion as to whether to impose a fine or the amount thereof (or both) (see generally, § 1202.4, subds. (b)-(d)), the proper remedy is to remand for that court to determine the amount of the parole revocation fine, if any, because the amount of that fine is identical to the amount imposed for the restitution fine, and if no restitution fine is imposed, it follows that no parole revocation fine can be imposed.

In contrast, where a restitution fine was imposed by the sentencing court or deemed imposed by the reviewing court, it would be an "idle gesture" to

remand the matter for the sentencing court to impose a parole revocation fine in the exact amount of the already imposed restitution fine. (See, e.g., *People v. Blessing* (1979) 94 Cal.App.3d 835, 839 [155 Cal.Rptr. 780].) Under these circumstances, the appropriate and expedient remedy is for the reviewing court to modify the judgment to reflect a parole revocation fine in an amount identical to that imposed for the restitution fine.[2]

Based on the foregoing, we modify the judgment to reflect a parole revocation fine in the amount of $200.

### 5. *State and County Penalty Assessments Mandatory*

■ Respondent contends the judgment also must be modified to reflect state and county penalty assessments. We agree.

"Upon a person being convicted of any crime in the State of California, the court shall order the defendant to pay a fine in the form of a penalty assessment in accordance with Section 1464." (§ 1202.4, subd. (a)(2).) However, "[t]he restitution fine [imposed pursuant to section 1202.4, subdivision (b)] shall not be subject to penalty assessments as provided in Section 1464[.]" (§ 1202.4, subd. (e); see also Welf. and Inst. Code, § 730.6, subd. (f) [comparable exemption in juvenile adjudications].) The parole revocation fine, an "additional restitution fine [which is] suspended unless the person's parole is revoked," also is not subject to such assessment. (§§ 1202.45, 1464, subd. (b); Gov. Code, § 76000, subd. (a).)

Section 1464 concerns the imposition, calculation, collection, allocation, and distribution of the state penalty assessment on fines, penalties, and forfeitures. In pertinent part, it provides: "Subject to Chapter 12 (commencing with Section 76000) of Title 8 of the Government Code, there shall be levied a state penalty, in an amount equal to ten dollars ($10) for every ten dollars ($10) or fraction thereof, upon every fine, penalty, or forfeiture imposed and collected by the courts for criminal offenses, including all offenses, except parking offenses as defined in subdivision (i) of Section 1463, involving a violation of the Vehicle Code or any local ordinance adopted pursuant to the Vehicle Code." (§ 1464, subd. (a).)

Government Code section 76000 embodies the county penalty assessment "upon every fine, penalty, or forfeiture imposed and collected by the courts

---

[2]We note that in *People v. Parker* (1998) 67 Cal.App.4th 200, 203 [78 Cal.Rptr.2d 868] review granted February 24, 1999 (S074831), the court modified the judgment to reflect a parole revocation fine but "warn[ed] that in the future we will decline to address these issues at the appellate level, where counsel have not first requested correction of the judgment and abstract in the trial court."

We conclude the better practice is to seek correction at the trial level. In the interest of judicial economy, however, we further conclude that on appeal modification of the judgment to reflect a parole revocation fine, rather than remand to the trial court, is the better practice where no issue as to the amount of the fine exists.

for criminal offenses" with the exception of "parking offenses subject to Article 3 (commencing with Section 40200) of Chapter 1 of Division 17 of the Vehicle Code." (Gov. Code, § 76000, subd. (a).) The county penalty assessment for each county is "an additional penalty of seven dollars ($7) for every ten dollars ($10) or fraction thereof which shall be collected together with and in the same manner as the amounts established by Section 1464[.]" (*Ibid.*)

"In any case where any person convicted of any offense, to which . . . section [1464] applies, is in prison until the fine is satisfied, the judge may waive all or any part of the state penalty, the payment of which would work a hardship on the person convicted or his or her immediate family." (§ 1464, subd. (d).) With the exception of this express grant of discretion, the sentencing court is without discretion regarding the imposition of the state and county penalty assessments or the amounts thereof. In other words, unless expressly exempted, the state and county penalty assessments are mandatory and the court acts in excess of its jurisdiction in failing to impose such state and county penalty assessments. (Accord, *People* v. *Martinez* (1998) 65 Cal.App.4th 1511, 1521-1522 [77 Cal.Rptr.2d 492]; *People* v. *Sierra* (1995) 37 Cal.App.4th 1690, 1694-1695 [44 Cal.Rptr.2d 575]; *People* v. *Heisler* (1987) 192 Cal.App.3d 504, 506-507 [237 Cal.Rptr. 452].)

The record reflects the court imposed a laboratory analysis fee in the amount of $50 but did not impose either a state or county penalty assessment. We conclude a laboratory analysis fee is the proper subject for the imposition of both state and county penalty assessments. (Accord, *People* v. *Martinez, supra,* 65 Cal.App.4th at p. 1522; see also *People* v. *Sierra, supra,* 37 Cal.App.4th at pp. 1694-1696 [drug program fee (Health & Saf. Code, § 11372.7)].) Accordingly, the judgment must be modified to reflect a $50 state and $35 county penalty assessment.

### 6. *Narcotics Offender Registration Requirement Not Part of Judgment*

■ Respondent contends the court erred in failing to order appellant to comply with the narcotics offender registration requirement. We find no error.

A person convicted in state court of certain felony narcotics-related offenses, including a violation of Health and Safety Code section 11350, "*shall* within 30 days of his or her coming into any county or city, or city and county in which he or she resides or is temporarily domiciled for that length of time, register with the chief of police of the city in which he or she resides or the sheriff of the county if he or she resides in an unincorporated area." (Health & Saf. Code, § 11590, subd. (a), italics added.)

The court found appellant guilty of possessing heroin. (Health & Saf. Code, §§ 11054, subd. (c)(11), 11350, subd. (a).) In sentencing appellant,

however, the court did not order him to comply with the narcotics offender registration requirement of Health and Safety Code section 11590 (section 11590). We hold that although section 11590 creates a duty on the part of any person convicted of the specifically enumerated narcotics-related offenses to comply with the registration provisions of the narcotics offender registration statute, section 11590 does not give rise to a concomitant duty on the part of the trial court to order that convicted person to comply with such registration provisions. Accordingly, the narcotics offender registration requirement of section 11590 is not part of the judgment, and modification of the judgment to reflect such requirement is therefore not warranted.

For a contrary conclusion, respondent relies on *People* v. *Monroe* (1985) 168 Cal.App.3d 1205 [215 Cal.Rptr. 51]. We find such reliance misplaced.

*Monroe* concluded ". . . section 290 requires a person convicted of violation of section 647a[, which is one of specifically enumerated offenses,] to register as a sex offender. The section uses the mandatory language 'shall' and leaves no discretion in the trial judge to not require registration if one or more of the violations occurs." (*People* v. *Monroe, supra,* 168 Cal.App.3d at p. 1209.)

We conclude *Monroe* is factually inapposite. A comparison of the provisions of the sex offender registration statute (§ 290 et seq.) and the narcotics registration statute (§ 11590 et seq.) reveals the fatal flaw in respondent's analogy.

The sex offender registration statute expressly provides that every person expressly enumerated as being required to register "shall be required to register." (§ 290, subd. (a)(1)(A).) Also, where "[a]ny person [is] ordered by any court to register pursuant to this section for any offense not included specifically in this section if the court finds at the time of conviction or sentencing that the person committed the offense as a result of sexual compulsion or for the purpose of sexual gratification[,] [t]he court shall state on the record the reasons for its findings and the reasons for requiring registration." (§ 290, subd. (a)(2)(E).)

. In contrast, the narcotics registration statute merely provides that every qualifying person "shall . . . register." Health and Safety Code section 11593 provides that such person "shall, prior to . . . release [on probation] or discharge [upon payment of a fine], be informed of his duty to register under Section 11590 by the court in which he has been convicted and the court shall require the person to read and sign such form as may be required by the Department of Justice, stating that the duty of the person to register under this section has been explained to him." (Cf. § 290, subd. (c) [duty falls to probation officer to disclose sex offender registration requirement

where person placed on probation, granted conditional release without supervised probation, or discharged upon payment of fine].)

Where the qualifying narcotics offender is confined in "a jail, prison, school, road camp, or other institution," "the official in charge of the place of confinement" is the one who "shall, prior to . . . discharge, parole, or release, [inform that person] of his duty to register under . . . section [11590] and the official shall require the person to read and sign such form as may be required by the Department of Justice, stating that the duty of the person to register under this section has been explained to him." (Health & Saf. Code, § 11592.)

Moreover, a knowing violation of the narcotics offender registration requirement is merely a misdemeanor. (Health & Saf. Code, § 11594.) A willing violation of the sex offender registration statute by "any person who is required to register under this section based on a felony conviction," on the other hand, is "a felony and shall be punished by imprisonment in the state prison for 16 months, or two or three years." (§ 290, subd. (g)(2).)

The disparity in the treatment of qualifying narcotics offenders and sex offenders is further evidenced by the duration of the respective registration requirements. With respect to narcotics offenders, "[a]ll registration requirements set forth in this article shall terminate five years after the discharge from prison, release from jail or termination of probation or parole of the person convicted. Nothing in this section shall be construed to conflict with the provisions of Section 1203.4 . . . concerning termination of probation and release from penalties and disabilities of probation." (Health & Saf. Code, § 11594.)

In sharp contrast, the sex offender registration statute provides: "Notwithstanding Section 1203.4 and except as provided in Section 290.5, a person who is convicted of a sex offense for which registration is required under Section 290 shall not be relieved from the duty to register under that section." (§ 290.1.) Section 290.5 provides that every qualified sex offender "shall be relieved of any further duty to register under Section 290 if not in custody, on parole, or on probation" "upon obtaining a certificate of rehabilitation." (§ 290.5, subd. (a).) A person convicted of "a violation of Section 288 or 288.5" (i.e., lewd or lascivious acts or continuous sexual abuse of a child) may be relieved of the duty to register upon obtaining a certificate of rehabilitation "provided that the person was granted probation [(§ 1203.066, subd. (c))], has complied with the provisions of Section 290 for a continuous period of at least 10 years immediately preceding the filing of the petition, and has not been convicted of a felony during that period." (§ 290.5, subd. (b)(3).) Other sex offenders are not relieved of the duty to register "until [those] person[s have] obtained a full pardon as provided in

Chapter 1 (commencing with Section 4800) or Chapter 3 (commencing with Section 4850) of Title 6 of Part 3." (§ 290.5, subd. (b)(1).)

Based on the foregoing, it is self-evident why the Legislature determined that the sex offender registration requirement must be part of the judgment: These types of offenders pose a continual serious threat to society that warrants constant monitoring by law enforcement and continuous supervision by the court. Making the registration requirement part of the judgment furthers and simplifies such goals.

The Legislature, however, did not consider narcotics offenders to pose such a dangerous threat or continual risk of recidivism. For that reason, the Legislature did not mandate that the narcotics registration requirement be part of the judgment.

### 7. *Amendment of Abstract Warranted*

Respondent contends the abstract of judgment must be corrected to reflect the proper award of precommitment credits, the parole revocation fine, the state and county penalty assessments, and the narcotics offender registration requirement. We find respondent's position to be meritorious except for the last item.

We direct the superior court to prepare an amended abstract of judgment to reflect an award of precommitment credit of 171 days, a $200 parole revocation fine, a $50 state penalty assessment, and a $35 county penalty assessment. (Accord, *People* v. *Martinez, supra,* 65 Cal.App.4th at p. 1523.) As discussed, *ante,* the narcotics offender registration requirement is not part of the judgment. The abstract therefore does not need to be amended in that regard.

### DISPOSITION

The judgment is modified to reflect an award of 171 days' precommitment credit; a $200 parole revocation fine; a $50 state penalty assessment; and a $35 county penalty assessment, and, as modified, the judgment is affirmed. The superior court is directed to prepare an amended abstract of judgment accordingly.

Hastings, J., and Curry, J., concurred.