Filed 12/26/14  P. v. Chilgevorkyan  CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>HAKOP CHILGEVORKYAN et al.,<br><br>Defendants and Appellants. | B249892<br><br>(Los Angeles County<br>Super. Ct. No. LA064719) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elizabeth A. Lippitt, Judge.  Affirmed with modifications.

Carlo A. Spiga, under appointment by the Court of Appeal, for Defendant and Appellant Hakop Chilgevorkyan.

Gideon Margolis, under appointment by the Court of Appeal, for Defendant and Appellant Sergey Sarkisyan.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

A jury convicted Hakop Chilgevorkyan of second degree robbery (Pen. Code, § 211)[1] and Sergey Sarkisyan of second degree robbery and assault with a semiautomatic firearm (§ 245, subd. (b)). The jury also found gang and firearm allegations to be true. Both appellants contend the gang enhancement was not supported by substantial evidence, and Chilgevorkyan contends the firearm enhancement against him was unsupported. We modify the judgments to correct Sarkisyan's presentence conduct credits and correctly impose court operations assessments. So modified, we affirm.

## FACTS AND PROCEDURE

### 1. The Robbery

On March 24, 2010, Sarkis Baldjyan was working as a dispenser at the Garden of Eden medical marijuana dispensary in North Hollywood, California. At approximately 2:00 a.m., appellants walked into the clinic. The lobby of the dispensary was separated from the rest of the dispensary by a secured metal door. Baldjyan was behind the metal door and could see into the lobby through a window. Sarkisyan reached through the window and tried to grab Baldjyan. Sarkisyan had a gun pointed at him. Baldjyan tried to back away and fell to the ground. Appellants told Baldjyan to "buzz them in" from the lobby, and Baldjyan complied. Sarkisyan had Baldjyan open the cash register and took the money from it. He also took Baldjyan's wallet and cell phone and struck Baldjyan in the head with the gun. Both appellants took merchandise and other items from the clinic. They had Baldjyan buzz them out and left with black garbage bags containing the stolen items.

Several officers had responded to a call that a robbery was taking place there. The prosecutor played surveillance video of the incident for the jury. Almost immediately after appellants exited the dispensary, the surveillance video showed Sarkisyan rushing back into the lobby and hiding a gun in a planter. Later that

---

[1] Further undesignated statutory references are to the Penal Code.

morning, an officer recovered the gun from the planter. Chilgevorkyan did not go back into the dispensary, as Sarkisyan did. When Chilgevorkyan saw the officers outside the dispensary, he began running through the parking lot. He bent down slightly as he was running, and the officers heard the sound of a metal object hitting the ground and sliding across the concrete. The officers stopped Chilgevorkyan and took him into custody. One of them recovered a gun from the ground underneath a nearby vehicle.

The garbage bags appellants took from the dispensary were later discovered to contain marijuana, pastries, and numerous electronic ballasts. Baldjyan identified Sarkisyan from a six-pack photographic lineup as the man who struck him with the gun.

## 2. *Gang Evidence*

Officer Gary Pugliese of the Los Angeles Police Department was the prosecution's gang expert and testified as follows. He was assigned to the North Hollywood gang enforcement detail at the time of trial. From 2004 to 2010, he was part of an organized crime task force in which his primary assignment was the Armenian Power street gang. He estimated conservatively that he had come into contact with approximately 100 Armenian Power gang members in his career. The gang had approximately 250 documented members. Rather atypically, the gang was not turf oriented and was more mobile than most gangs.

Typical Armenian Power gang tattoos included "Armenian Power," "AP," "AP13," and "Armenian Pride" sometimes followed by a "13." Chilgevorkyan had a tattoo of the Armenian Power hand sign on his chest, which signified to Officer Pugliese that Chilgevorkyan was an Armenian Power gang member. Sarkisyan had "AP" tattooed on the back of his head and "APx3" tattooed on his elbow, which Officer Pugliese opined stood for "AP13." Both signified his membership in the Armenian Power gang. It would have been unusual for anyone other than Armenian Power gang members to have Armenian Power tattoos. If actual Armenian Power members saw someone who had those tattoos and was not a member, they would

3

likely assault or kill that person. Further, rival gang members might see those tattoos and try to assault or kill that person.

Officers found a black Lexus at the dispensary parking lot with the keys in the ignition and a cell phone in the center console. On the cell phone, among other things, the officers found a picture of what appeared to be Sarkisyan's elbow tattoo, a picture of Sarkisyan himself sitting against a wall, a picture of someone's hand making the hand sign used for "A" in Armenian Power, and four pictures of handguns.

The primary activities of the Armenian Power gang included murder, shootings, assault with a deadly weapon, robbery, fraud, extortion, possession of narcotics, and vandalism. In 2006, Hayk Arakelyan was an Armenian Power gang member who was convicted of robbery, and gang allegations were found to be true. Also in 2006, Isaak Torosyan was an Armenian Power gang member who was convicted of robbery, and gang allegations were found to be true.

Officer Pugliese testified that gang members are so effective in committing crimes because of their numbers and their ability to intimidate. The victims and other witnesses may be afraid to come forward or testify because they fear the individual gang member who committed the crime, but they also fear retaliation from the individual's "homies" in the gang.

The prosecutor set up a hypothetical based on the facts of this case. Based on these facts, Officer Pugliese opined the robbery was committed for the benefit of, at the direction of, or in association with a criminal street gang:

> "First of all, going back to the two individuals who both have in my opinion Armenian Power gang tattoos, the fact that they are working together, the fact that they go in to do a robbery which is consistent with the type of crime that Armenian Power commits, the fact that one of them in his vehicle has a phone that has photos on it of other handguns along with a gang hand sign of the ["A"] and pictures of his tattoo, if you take the totality of all those circumstances, then in my opinion that is a gang crime using two gang members in association with each other, and it's also in furtherance of the gang."

Officer Pugliese further testified that, in his experience talking with Armenia Power gang members over the years, they take the fruits of their robberies or drug sales and use them to "take care of the big homies" who are in prison, or they use it for further gang activities, such as buying weapons to use in later crimes or buying more drugs to sell. In the hypothetical posed by the prosecutor, the marijuana could be sold or given to the "homies," and the electronic ballasts they took could be used to cultivate marijuana.

### 3. Procedural History

The amended information charged both appellants with second degree robbery and charged Sarkisyan with assault with a semiautomatic firearm. The amended information alleged the offenses were committed for the benefit of, at the direction of, and in association with a criminal street gang. (§ 186.22, subd. (b)(1)(C).) It also alleged appellants personally used a firearm (§§ 12022.5, subd. (a), 12022.53, subd. (b)), and a principal was armed or personally used a firearm (§§ 12022, subd. (a)(1), 12022.53, subds. (b), (e)(1)). As to Sarkisyan, it alleged he had served two prior prison terms (§ 667.5, subd. (b)), had one prior conviction for a serious felony (§ 667, subd. (a)(1)), and had one prior strike within the meaning of the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170, subd. (a)-(d)).

The jury found appellants guilty as charged and found the gang and firearm allegations to be true. The court found the prior conviction allegations against Sarkisyan to be true. The court sentenced Chilgevorkyan to 13 years in state prison, consisting of 3 years for the robbery count and 10 years for the gang enhancement. The court also imposed but stayed a 10-year term and a 1-year term for two different firearm enhancements.

The court sentenced Sarkisyan to 35 years in state prison, consisting of 5 years for the robbery count, doubled pursuant to the 'Three Strikes" law; 10 years for the gang enhancement; 10 years for a firearm enhancement; and 5 years for the prior serious felony conviction under section 667, subdivision (a)(1). The court also imposed but stayed a 1-year term for a second firearm enhancement, and imposed but

5

stayed a sentence on the count for assault with a semiautomatic firearm. The court awarded Sarkisyan 1,319 days of presentence custody credit, consisting of 1,152 actual days and 167 days of good time/work time credit.

## DISCUSSION

### 1. *Substantial Evidence Supported the Gang Enhancement*

Both appellants assert the jury's true finding on the gang enhancement was not supported by substantial evidence. They contend there was no evidence they had the requisite specific intent or that their crimes were committed for the benefit of, at the direction of, or in association with a gang. We disagree.

When a defendant claims a gang enhancement was based on insufficient evidence, we "review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find" the gang enhancement to be true. (*People v. Albillar* (2010) 51 Cal.4th 47, 60 (*Albillar*).) "We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Ibid.*)

The gang enhancement, section 186.22, subdivision (b)(1), has two prongs. It requires that defendants (1) have committed a felony "for the benefit of, at the direction of, or in association with any criminal street gang," and (2) with "the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1).)

As to the specific intent prong, intentional acts combined with knowledge that those intentional acts would assist a crime by gang members is sufficient to satisfy this prong. (*People v. Villalobos* (2006) 145 Cal.App.4th 310, 322.) Thus, "if substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer that the defendant had the

6

specific intent to promote, further, or assist criminal conduct by those gang members." (*People v. Albillar, supra*, 51 Cal.4th at p. 68; see *People v. Villalobos, supra*, 145 Cal.App.4th at p. 322 ["[c]ommission of a crime in concert with known gang members is substantial evidence which supports the inference that the defendant acted with the [requisite] specific intent"].)

Here, the record discloses substantial evidence of the requisite specific intent. The evidence clearly shows appellants intentionally committed the robbery together and assisted each other. They entered the dispensary together; Sarkisyan drew a gun on Baldjyan while Chilgevorkyan opened the doorway from the lobby and entered the dispensary; Sarkisyan followed behind him and they both proceeded to take items from the premises; Sarkisyan kept a gun trained on Baldjyan and hit him in the head; appellants left together, each carrying a garbage bag full of items. They both had Armenian Power gang tattoos -- Sarkisyan on his head and elbow, Chilgevorkyan on his chest -- signifying their membership in the gang. These intentional acts by two gang members actively assisting one another were sufficient to infer appellants had the specific intent to further or assist criminal conduct by gang members.

The cases cited by appellants are inapposite. They rely on *People v. Ramon* (2009) 175 Cal.App.4th 843 and *In re Daniel C.* (2011) 195 Cal.App.4th 1350 (*Daniel C.*). In *Ramon*, a deputy pulled over two gang members who were driving a stolen vehicle in their gang territory and who had an unregistered gun in the vehicle. (*Ramon*, *supra*, at p. 847.) Based on a hypothetical involving the circumstances of the case, the prosecution's gang expert opined driving a stolen vehicle and possessing an unregistered firearm benefitted the gang. (*Id.* at pp. 847-848.) The court refused to hold "as a matter of law that two gang members in possession of illegal or stolen property in gang territory are acting to promote a criminal street gang." (*Id.* at p. 853.) The court held while it was possible the two were acting for the benefit of the gang, the mere possibility was simply speculation. (*Id.* at p. 851.) Still, the court acknowledged its "analysis might be different if the expert's opinion had included 'possessing stolen vehicles' as one of the activities of the gang." (*Id.* at p. 853.)

Unlike in *Ramon*, there was nothing speculative about the evidence in this case. Appellants actively assisted each other, known gang members, in robbing Baldjyan and the dispensary. It was reasonable for the jury to infer they each intended to assist criminal conduct by another gang member. Moreover, unlike the expert in *Ramon*, the expert here opined that the charged crimes were activities of the Armenian Power gang.

*Daniel C.* is inapposite because it involved a gang member committing a crime alone. There was no evidence the defendant acted in concert with his companions, who had left the store before he committed the robbery, did not assist him in assaulting the store manager, and did not see what happened after they left. (*Daniel C., supra*, 195 Cal.App.4th at pp. 1353, 1361.)

Moving to the other prong, the evidence was also sufficient to show appellants committed the robbery for the benefit of, at the direction of, or in association with the gang. When gang members commit a crime together, the jury may reasonably infer they committed the crime "in association with any criminal street gang." (§ 186.22, subd. (b)(1); see *People v. Albillar, supra*, 51 Cal.4th at p. 68.) Additionally, it is well settled that the jury may rely on expert testimony about gang culture and habits to support its finding on a gang allegation. (*People v. Ferraez* (2003) 112 Cal.App.4th 925, 930.) Officer Pugliese testified robbery was one of the primary activities of the Armenian Power gang. In response to a hypothetical involving the facts of this case, he opined the crime would benefit the gang because the proceeds of robbery could be funneled back into the gang to support further criminal activities, used to cultivate and sell marijuana, or used to support gang members in prison. While it was sufficient that appellants committed the charged crimes in association with fellow gang members, there was also evidence from which the jury could infer the crimes benefitted the gang. (*People v. Martinez* (2008) 158 Cal.App.4th 1324, 1332; *People v. Morales* (2003) 112 Cal.App.4th 1176, 1198.)

The case cited by appellants for a contrary result, *People v. Ochoa* (2009) 179 Cal.App.4th 650 (*Ochoa*), is again inapposite. In *Ochoa*, the gang expert did not

testify that the charged crime was primary activity of the gang; there was no other evidence linking the crime to the gang, such as the display of gang signs, the calling out of the gang's name, or the committing of the crime in gang territory; and the defendant committed the crime alone, without fellow gang members. (*Id.* at pp. 653, 662.) The court thus found no basis for the finding the crime gang-related and held the expert's testimony was speculative. (*Id.* at p. 663.) But the necessary evidentiary basis does exist here, when robbery was a primary activity of the gang and appellants committed the crime in association with each other.

### 2. *Substantial Evidence Supported the Firearm Enhancement Against Chilgevorkyan*

Chilgevorkyan contends the evidence was insufficient to support imposition of the firearm enhancement (§ 12022.53, subds. (b), (e)(1)) against him. We disagree. His argument assumes the gang enhancement was unsupported, which we have already found was not the case.

The jury found true that, in the commission of the robbery, a principal personally used a firearm within the meaning of section 12022.53, subdivisions (b) and (e)(1). The enhancement in section 12022.53, subdivision (e)(1) imposes vicarious liability for firearm use on aiders and abettors who commit crimes in participation with a criminal street gang. (*People v. Garcia* (2002) 28 Cal.4th 1166, 1171.) Section 12022.53, subdivision (e)(1) applies to any defendant who is a principal in the offense, even if he or she is not the person who used a firearm, when the prosecution proves (1) the defendant violated the gang enhancement statute (§ 186.22, subd. (b)), and (2) *any* principal in the crime personally used a firearm under section 12022.53, subdivision (b). (*People v. Miranda* (2011) 192 Cal.App.4th 398, 411.) Chilgevorkyan does not dispute that Sarkisyan, another principal in the robbery, personally used a firearm during the commission of the robbery. Indeed, the evidence is clear that Sarkisyan drew a gun on Baldjyan and hit him with it. There can be no dispute a principal used a firearm under section 12022.53, subdivision (b). Chilgevorkyan argues instead that the gang enhancement was unsupported, and therefore the jury could not hold him vicariously liable for another principal's use of a firearm. Because we have rejected

9

his argument that the gang enhancement was unsupported, his argument on the firearm enhancement necessarily fails.

### 3. *Sarkisyan Is Entitled to Five Additional Days of Presentence Custody Credit*

Sarkisyan contends he was entitled to five additional days of presentence custody credit. Respondent agrees, as do we.

Sarkisyan could accrue 15 percent of his presentence time in custody in good time/work time credit. (§ 2933.1, subd. (c).) The court awarded him 1,152 actual days of credit and 167 days of good time/work time credit. But 15 percent of 1,152 is 172.8, not 167. He was thus entitled to 172 days of good time/work time credit, or five more days. We may order the abstract of judgment corrected. (*People v. Taylor* (2004) 119 Cal.App.4th 628, 647 ["A sentence that fails to award legally mandated custody credit is unauthorized and may be corrected whenever discovered."].)

### 4. *Court Operations Assessments Should Be Imposed on Both Appellants*

When fees or assessments are mandatory and the trial court fails to impose them, the result is an unauthorized sentence that we may correct on appeal. (*People v. Terrell* (1999) 69 Cal.App.4th 1246, 1255.) Respondent contends the court neglected to impose a mandatory assessment. We agree.

Section 1465.8 imposes a $40 assessment per conviction to assist in funding court operations. (§ 1465.8, subd. (a)(1).) The court must impose the assessment for each offense of which the jury convicted the defendant, regardless of whether the court stayed the sentence on the offense. (*People v. Crittle* (2007) 154 Cal.App.4th 368, 371.) Accordingly, the court should have assessed $80 against Sarkisyan and $40 against Chilgevorkyan to assist in funding court operations. (§ 1465.8, subd. (a)(1).)

### DISPOSITION

The judgment against Sarkisyan is modified to reflect an award of 172 days of good time/work time credit and a court operations assessment of $80 under section 1465.8. The judgment against Chilgevorkyan is modified to reflect a court operations assessment of $40 under section 1465.8. The trial court shall prepare an amended

10

abstract of judgment showing the modifications and forward a certified copy to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.


FLIER, J.

WE CONCUR:


RUBIN, Acting P. J.


GRIMES, J.

11