Filed 11/19/20  P. v. Amaya CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074093 |
| v. | (Super.Ct.No. RIF1201528) |
| ARMANDO AMAYA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Becky Dugan, Judge. Affirmed with directions.

Robert L.S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

Armando Amaya challenges the denial of his petition to reclassify his felony burglary conviction as misdemeanor shoplifting under Penal Code[1] section 1170.18, which California voters enacted as part of the Safe Neighborhoods and Schools Act (Proposition 47). (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, pp. 70-74.) In 2013, Amaya was convicted of robbery and burglary after the prosecution presented evidence that he and his brother committed an armed robbery of a convenience store clerk, stole her wallet and phone, and took about $80 from the cash registers and a few packs of beer. In 2019, the trial court summarily denied Amaya's section 1170.18 petition because his burglary conviction was premised on his entry into the store with an intent to commit robbery, a violent crime.

On appeal, Amaya contends the court's ruling was error because his burglary qualifies as misdemeanor shoplifting, a new offense created by Proposition 47 and codified in section 459.5. We disagree. Shoplifting is defined as entering a commercial establishment with intent to commit low-value *theft* while that establishment is open during regular business hours. (§ 459.5, subd. (a) [value of property taken must be less than $950]; *People v. Gonzales* (2017) 2 Cal.5th 858 (*Gonzales*) [§ 459.5 applies to all types of theft, not just larceny].) In this case, Amaya and his brother did not take the property by theft but by robbery, which is a violent, aggravated form of theft unaffected by the ameliorative provisions in Proposition 47. Amaya also argues that the trial court miscalculated his presentence custody credits when it modified his sentence on remand

---

[1] Unlabeled statutory citations refer to the Penal Code.

from his direct appeal, and the People correctly concede on this point. We therefore affirm the denial of Amaya's section 1170.18 petition but modify the judgment to correct the presentence custody credits.

## I

## FACTS

We take the facts of the incident from the trial transcript, which is part of Amaya's record of conviction. (*People v. Washington* (2018) 23 Cal.App.5th 948, 953.) On November 20, 2011, at about 2:00 a.m., Amaya and his brother, Robert, committed an armed robbery of a Circle K in Riverside, and it was caught on surveillance video. The store was open but the doors were locked because the clerk was on a break. Amaya asked the clerk to let him in the store and, going against her better judgment, she obliged because he didn't look threatening. The clerk locked the door behind Amaya, but when she wasn't looking he unlocked it so his brother could enter.

Robert entered the store wearing a mask and carrying a semiautomatic gun. He pointed the gun at the clerk, pushed her to the ground, and told her to open the cash registers. To speed things up, Robert and Amaya took turns kicking her to "move [her] along like a dog." After she opened the registers and they took the money (which totaled about $80), one of the brothers leaned over her as she was lying on the floor and took her wallet from one of her back pockets and her cell phone from the other. He told her they now knew where she lived, which she took as a threat to her life were she to tell anyone

about the incident. The other brother grabbed three packs of beer, then they told the clerk "Nice doing business with you," and left.

The jury convicted Amaya of robbery and found true the allegation that a principal was armed (§§ 211, 12022, subd. (d)), burglary (§ 459), and dissuading a witness (§136.1, subd. (b)(1).) The trial court sentenced him to 25 years to life for the robbery, plus one year for a prior prison conviction.[2] In an unpublished opinion, we affirmed the judgment in all respects except we remanded to the trial court to either strike or pronounce judgment on the firearm enhancement attached to the robbery conviction. (*People v. Amaya* (Cal.Ct.App., Jan. 9, 2015, E059609) 2015 WL 133744, at *1.) On remand, the trial court struck the enhancement.

Following the enactment of Proposition 47, Amaya filed a section 1170.18 petition seeking to have his burglary conviction reclassified as misdemeanor shoplifting. He alleged he was convicted of robbery "for taking three 18 packs of beer" and that his burglary conviction was premised on taking the "same property." He argued that, as a result, his felony burglary conviction qualifies as misdemeanor shoplifting under section 459.5. The trial court summarily denied his petition, concluding the burglary was not a qualifying offense under Proposition 47 because it was premised on an intent to commit robbery, which is a violent felony.

---

[2] The court also imposed a concurrent sentence of 25 years to life for the dissuading conviction, and it stayed the sentence for the burglary under section 654 because it arose from the same occurrence as the robbery.

4

## II

## ANALYSIS

In November 2014, the California voters approved Proposition 47, an initiative that reclassified as misdemeanors certain nonviolent drug and theft offenses previously cast as felonies. (*People v. Valenzuela* (2019) 7 Cal.5th 415, 418.) Proposition 47 also created a petitioning procedure making those changes available to offenders who had previously been convicted of reclassified offenses. (§ 1170.18.) To obtain relief under this procedure, the petitioner must demonstrate they "would have been guilty of a misdemeanor . . . had [Proposition 47] been in effect at the time of the offense." (§ 1170.18, subd. (a).)

As relevant here, Proposition 47 added section 459.5 to the Penal Code—the misdemeanor shoplifting provision Amaya argues applies to his case. That section provides: "(a) Notwithstanding Section 459 [burglary], shoplifting is defined as entering a commercial establishment *with intent to commit larceny* while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950). Any other entry into a commercial establishment with intent to commit larceny is burglary." (§ 459.5, subd. (a), italics added.) Section 459.5 also contains a charging limitation. It directs that "[a]ny act of shoplifting as defined in subdivision (a) *shall be charged as shoplifting*" and that "[n]o person who is charged with shoplifting may also be charged with *burglary or theft of the same property*." (§ 459.5, subd. (b), italics added.)

Amaya argues he would have been guilty of shoplifting had Proposition 47 been in effect when he committed the burglary because he entered the convenience store with an intent to steal property worth less than $950. According to Amaya, the fact his burglary "transform[ed] into a robbery after entry" should not impact whether the offense qualifies as shoplifting. We are unpersuaded.

The record contains substantial evidence to support a finding that Amaya entered the convenience store with the intent to commit armed robbery, not simple theft. The sequence of events shows the brothers had a plan. Amaya was their ticket inside the store, and Robert was the closer. The clerk told the jury she had been hesitant to let Amaya inside, but ultimately decided to do so because he looked like an "average Joe" and didn't seem threatening. Once inside, Amaya unlocked the door so his brother, who was masked and armed, could enter. This evidence does not support a finding that Amaya entered the store with only an intent to steal some beer, as he claimed in his petition. Instead, the evidence provides strong support for the jury to conclude that he entered the store with an intent to take all the money in the cash registers *by means of an armed robbery*.

This is fatal to Amaya's petition because Proposition 47 does not apply to violent felonies, like robbery. (See *People v. Romanowski* (2017) 2 Cal.5th 903, 907, quoting *Harris v. Superior Court* (2016) 1 Cal.5th 984, 992 ["One of Proposition 47's primary purposes is to reduce the number of nonviolent offenders in state prisons, thereby saving money and focusing prison on offenders considered more serious under the terms of the initiative"]; see also § 667.5, subd. (c)(9) [defining robbery as a violent felony].) Though

6

robbery includes theft, it requires the *additional element* of the use of force or fear, making the offense an aggravated theft, or a "theft-plus" crime. (See *People v. Soto* (2018) 23 Cal.App.5th 813, 822.) As the court explained in *Soto*, Proposition 47 applies to *nonviolent* theft cases, not to violent or aggravated forms of theft—like robbery— which require additional elements beyond the elements that make up a theft. (*Soto*, at p. 822.) "A robber might take property by larceny worth less than $950," but to construe a robbery as a theft offense affected by Proposition 47 "would thwart [the initiative's] objective to reduce sentences for *nonviolent* crimes while shifting spending toward *more serious* offenses." (*Soto*, at pp. 822-823.)

Amaya's assertion that *Gonzales* mandates a different conclusion is incorrect. In *Gonzales*, the defendant was convicted of burglary for cashing a forged check for $125 at a bank, and our Supreme Court had to decide whether entering a commercial establishment with an intent to cash a low-value forged check—which isn't a form of larceny—nevertheless qualified as shoplifting under section 459.5. The court held that even though section 459.5 references larceny only, the electorate intended the provision to also apply where a defendant enters a commercial establishment with an intent to commit *nonlarcenous* theft, such as theft by false pretenses or embezzlement. (*Gonzales*, *supra*, 2 Cal.5th at p. 862.) In the part of *Gonzales* Amaya relies on, the court rejected the Attorney General's argument that the defendant could still be convicted of burglary because there was substantial evidence he entered the establishment with the intent to commit *identify theft*. In dicta, the court reasoned that "the shoplifting statute *would* have

precluded a burglary charge based on an entry with intent to commit identity theft here because *the conduct underlying* such a charge *would have been the same* as that involved in the shoplifting, namely, the cashing of the same stolen check to obtain less than $950." (*Id.* at pp. 876-877, italics added.) Amaya claims this reasoning "illustrates that so long as the defendant enters a building with the intent to commit a [low-value] theft," section 459.5's charging limitation applies and the defendant cannot be charged with burglary, only shoplifting.

Amaya reads *Gonzales* too broadly. The court held that section 459.5 applies to entry into a commercial establishment with an intent to commit any type of *theft*. What the court did not hold is that the provision applies to entry to commit a violent or aggravated form of theft, which is what occurred here. The court explicitly acknowledged that "[a] felony burglary charge could legitimately lie if there was proof of entry with intent to commit a *nontheft felony* or an intent to commit a theft of other property exceeding the shoplifting limit." (*Gonzales*, *supra*, 2 Cal.5th at p. 877, italics added.) Indeed, after *Gonzales*, our high court had to decide the hypothetical the Attorney General raised in *Gonzales*—whether misuse of personal identifying information in violation of section 530.5 (sometimes colloquially called "identity theft") qualifies as theft for purposes of the shoplifting provision. (*People v. Jimenez* (2020) 9 Cal.5th 53, 59.) The court held that misuse of personal identifying information is, despite its colloquial description, "*not* a theft offense because criminal liability pivots on how the information was used rather than how it was acquired. The offense therefore evinces a

8

concern with the panoply of harms occurring when personal information is no longer personal." (*Ibid.*, italics added.) So, too, with robbery, which evinces a concern not just with the unwanted taking of property but also with the use of assaultive behavior. And, in any event, Amaya's comparison to *Gonzales* is inapt because unlike cashing a forged check and misusing personal identifying information, "the conduct underlying" the act of obtaining $80, beer, and a clerk's personal property by theft is not "the same" as obtaining that property by armed robbery. (*Gonzales*, at p. 877.)

When it approved Proposition 47 and section 459.5, the electorate "carv[ed] out" of burglary the "*lesser* crime" of shoplifting. (*People v. Colbert* (2019) 6 Cal.5th 596, 602, italics added.) Nothing in the initiative indicates that the California voters intended to eliminate the crime of burglary premised on an intent to engage in violent, assaultive conduct. (See *Gonzales*, *supra*, 2 Cal.5th at p. 870 [observing that Proposition 47 "expressly states an intent to '[r]equire misdemeanors instead of felonies for *nonserious*, *nonviolent* crimes like petty theft and drug possession"], italics added.) We therefore conclude the court properly denied Amaya's petition.

As a final issue, the parties agree that the trial court miscalculated Amaya's presentence custody credits when it resentenced him on remand from his direct appeal. When a trial court modifies a defendant's sentence during the term of imprisonment, it must credit *all* the time the defendant has already served against the new sentence. (*People v. Buckhalter* (2001) 26 Cal.4th 20, 23; § 2900.1.) The court failed to do so at Amaya's resentencing in this case when it struck the firearm enhancement. When the

9

court originally sentenced Amaya on July 22, 2013, it awarded him 463 days of presentence custody credits and 69 days of good behavior credits. When the court resentenced him on April 17, 2015, it awarded the same amount of presentence custody credits (463 days), but it should have added the 634 days Amaya had spent in custody since the original sentencing. We therefore direct the trial court to prepare an amended abstract of judgment to reflect a presentence custody credit of 1,166 days (that is, 1,097 days of confinement credits plus 69 days of good behavior credits). (*People v. Terrell* (1999) 69 Cal.App.4th 1246, 1260.)

### III

### DISPOSITION

We affirm the denial of Amaya's petition but modify the judgment to reflect an award of 1,166 days' presentence credit. We direct the clerk of the superior court to prepare an amended abstract of judgment accordingly and forward it to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH
J.

We concur:

CODRINGTON
Acting P. J.

MENETREZ
J.

10