Filed 11/12/13  P. v. Oran CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>    v.<br><br>JESSE KENNETH ORAN,<br><br>      Defendant and Appellant. | C068486<br><br>(Super. Ct. No. 10F06769) |

In a fit of road rage, defendant Jesse Kenneth Oran merged into a freeway lane already occupied by Tessa Canavarro, causing a collision that killed Canavarro. Convicted of vehicular manslaughter with gross negligence, defendant appeals.  He contends:  (1) the evidence was insufficient to sustain a finding that he was grossly negligent, (2) the jury instructions may have allowed the jury to convict defendant of vehicular manslaughter on a factually irrelevant theory, (3) there was insufficient evidence to support the booking and classification fees imposed, and (4) the trial court unlawfully imposed two restitution fines under Penal Code section 1202.4.

1

We find no merit in defendant's contentions. However, we conclude that the trial court imposed an unauthorized sentence by imposing a Penal Code section 1202.45 restitution fine that was not equal to the Penal Code section 1202.4 restitution fine, as required by law. We therefore modify the Penal Code section 1202.45 restitution fine and affirm the judgment as modified.

## BACKGROUND

On May 2, 2010, Tessa Canavarro was headed home to Sacramento westbound on Interstate 80 at around 9:00 p.m. after being with friends at a bar and grill in Lincoln. Other motorists noticed that there was some problem between Canavarro, who was driving a Mercedes, and defendant, who was driving a Honda.

At one point, the Honda was just five or six feet behind the Mercedes, going about 70 miles per hour and shining its high beams on the Mercedes. The Honda aggressively changed lanes, flashing its lights and pulling next to the Mercedes at times. The Mercedes was in lane number two, counting from the left. Canavarro raised her hands in a gesture that one of the other motorists interpreted to mean, "What are you doing?" Eventually, the Honda, near the Antelope exit, rapidly changed lanes from behind the Mercedes into lane number three, pulled forward, then moved back into lane number two, hitting the front part of the Mercedes. The collision caused both drivers to lose control. The cars eventually hit the center divider; the left side of the Honda lifted up; and a tire and wheel on the Honda broke through the driver's window of the Mercedes and killed Canavarro. At the time of her death, Canavarro's blood alcohol level was .23 percent.

Defendant had three passengers in the Honda. Jennifer Martinez, who was defendant's fiancée, was in the front passenger seat, while Jennifer's daughter Ashley Martinez and Robert Olsen were in the backseat. When motorists approached the wreckage, Jennifer said, "It was that stupid bitch's fault." She also said, "Did you see the car that hit us?" Defendant said, "That bitch cut me off." Jennifer told an officer, "The only thing you need to know is she was driving 90 miles per hour and hit us."

2

Jennifer Martinez testified that the conflict began where Highway 65 merges into Interstate 80. Canavarro rapidly approached from behind and was driving aggressively and flashing her high beam lights on them. The Mercedes almost hit the Honda, and, when it got in front of the Honda, Canavarro slammed on the brakes, requiring defendant to slow down quickly to avoid the Mercedes.

Ashley Martinez testified that Canavarro was speeding and swerved several times at them. During one of these episodes, Canavarro blew kisses toward the Honda. Ashley sustained a broken arm, a bruised rib, and cuts and abrasions on her leg.

The prosecution introduced accident-reconstruction-expert testimony that the accident happened when the Honda encroached on the Mercedes's lane. The defense introduced accident-reconstruction-expert testimony that the Mercedes was overtaking the Honda in the adjacent lane when the Mercedes moved into the rear driver's side of the Honda in a maneuver similar to a PIT (pursuit intervention technique) maneuver used by law enforcement.

The district attorney charged defendant by information with vehicular manslaughter of Tessa Canavarro with gross negligence (count one; Pen. Code, § 192, subd. (c)(1)), with an allegation that defendant inflicted great bodily injury on Ashley Martinez (Pen. Code, former § 12022.7, subd. (a), Stats. 2002, ch. 126, § 6, p. 696), and misdemeanor driving without a valid license (count two; Veh. Code, § 12500, subd. (a)). The district attorney also alleged that defendant had a prior felony prison term. (Pen. Code, § 667.5, subd. (b).)

Defendant pleaded no contest to count two. A jury found defendant guilty on count one, finding true the great-bodily-injury allegation. The trial court dismissed the prior prison term allegation on the prosecution's motion.

The court sentenced defendant to the upper term of six years in state prison for vehicular manslaughter, with a consecutive three years for the great-bodily-injury enhancement, and a concurrent 20-day jail term for driving without a license.

3

DISCUSSION

I

*Sufficiency of Evidence*

Defendant contends that the evidence was insufficient to support the jury's finding of gross negligence as an element of vehicular manslaughter with gross negligence, and therefore the conviction violated his due process and fair trial rights. He maintains that his lane change that caused the collision was, at most, simple negligence. The record does not support defendant's contention.

" 'In reviewing the sufficiency of evidence under the due process clause of the Fourteenth Amendment to the United States Constitution, the question we ask is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' ([*People v.*] *Rowland* [(1992)] 4 Cal.4th [238,] 269 . . . .) We apply an identical standard under the California Constitution. (*Ibid.*) 'In determining whether a reasonable trier of fact could have found defendant guilty beyond a reasonable doubt, the appellate court "must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' (*People v. Johnson* (1980) 26 Cal.3d 557, 576, italics omitted.)" (*People v. Young* (2005) 34 Cal.4th 1149, 1175.) In reviewing the sufficiency of the evidence, "a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.]" (*Id.* at p. 1181.) We will reverse for insufficient evidence only if " ' " 'upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" ' " (*People v. Manriquez* (2005) 37 Cal.4th 547, 577.)

Penal Code section 192, subdivision (c)(1) defines vehicular manslaughter with gross negligence as "driving a vehicle in the commission of an unlawful act, not

4

amounting to felony, and with gross negligence; or driving a vehicle in the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence."

"Gross negligence is the exercise of so slight a degree of care as to raise a presumption of conscious indifference to the consequences. [Citation.] 'The state of mind of a person who acts with conscious indifferences to the consequences is simply, "I don't care what happens." ' [Citation.] The test is objective: whether a reasonable person in the defendant's position would have been aware of the risk involved. [Citation.]" (*People v. Bennett* (1991) 54 Cal.3d 1032, 1036.)

The evidence in this case supported the jury's finding that defendant acted with gross negligence. The jury could infer from defendant's aggressive driving, his anger toward Canavarro, and his obvious awareness of Canavarro's presence in the lane to which he changed that defendant acted with conscious indifference to the consequences. The jury could conclude that he either intentionally caused the collision or consciously disregarded the risk that his action would cause a collision. Any reasonable person would know that causing such a high-speed collision was dangerous to life. Because Canavarro died as a result of defendant's actions, he committed vehicular manslaughter with gross negligence.

Defendant, however, argues: "His blood alcohol was zero. There is no evidence that when he changed lanes and hit Canavarro's vehicle he was speeding or going faster than traffic in general. He properly and correctly put on his blinkers when he moved into the number two lane prior to trying to come back into the number three lane. He may have passed the Mercedes at least once without incident. When [a witness] passed [defendant] prior to the accident '. . . he had both hands on the wheel, and he didn't look mad or anything . . . .' He was not gesturing. That he may have changed lanes in an aggressive manner shows ordinary, not gross, negligence. Such a lane change does not

5

show a disregard for human life, but merely a lack of reasonable care." (Record citations omitted.)

This is nothing more than an attempt to marshal the facts favorable to defendant and, from those facts, draw inferences in his favor. (See *People v. Battle* (2011) 198 Cal.App.4th 50, 62 [restricting sufficiency-of-evidence analysis to facts favorable to defendant forfeits contention].) Using the correct standard of review, as stated and applied above, we conclude that the evidence of gross negligence was sufficient to support the conviction.

## II

### *Factual Theory of Guilt*

Defendant contends that we must reverse the vehicular manslaughter with gross negligence conviction because there is a possibility that the jury based its verdict on a theory that was not supported factually. Specifically, defendant argues that the jury may have convicted on that count by relying on the flashing of the high beams or tailgating and not the lane change as causing the fatal crash. This contention is without merit.

The trial court instructed the jury that one of the elements of vehicular manslaughter with gross negligence is that "[w]hile driving [the] vehicle, the defendant committed an infraction[.]" The information alleged four infractions of the Vehicle Code: unsafe lane change (Veh. Code, § 22107), failure to stay in one's lane (Veh. Code, § 21658, subd. (a)), following too closely (Veh. Code, § 21703), and failure to dim high beams (Veh. Code, § 24409, subd. (b)). Defendant asserts on appeal that, if the jury based its verdict of guilty on flashing the high beams or following too closely, then the verdict was unsupported because those actions did not cause the death. However, as we noted in part I, the evidence was sufficient to sustain the verdict based on defendant's lane change, which caused the death.

"If [an] inadequacy of proof is purely factual, of a kind the jury is fully equipped to detect, reversal is not required whenever a valid ground for the verdict remains, absent

6

an affirmative indication in the record that the verdict actually did rest on the inadequate ground." (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129 (*Guiton*).) "[I]nstruction on an unsupported theory is prejudicial only if that theory became the sole basis of the verdict of guilt; if the jury based its verdict on the valid ground, or on both the valid and the invalid ground, there would be no prejudice, for there would be a valid basis for the verdict. . . . [T]he appellate court should affirm the judgment unless a review of the entire record affirmatively demonstrates a reasonable probability that the jury in fact found the defendant guilty solely on the unsupported theory." (*Id*. at p. 1130; see also *People v. Seaton* (2001) 26 Cal.4th 598, 645 [applying *Guiton*]; *People v. Poindexter* (2006) 144 Cal.App.4th 572, 586-587 [same].)

Here, there is no reasonable probability that the jury found defendant guilty based solely on the theory that defendant failed to dim his lights or followed too closely. Indeed, it is unreasonable to conclude that the jury convicted based on anything other than defendant's lane change, which caused the collision.

Defendant asserts that *Guiton* should be overruled, but he concedes that we cannot overrule it. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455.)

Therefore, the conviction is sound.

## III

### *Booking and Classification Fees*

Defendant contends that the $287.78 booking fee and the $59.23 classification fee must be reversed because the trial court did not make express findings about the actual administrative costs or defendant's ability to pay. The contention, however, was forfeited.

When a defendant is convicted, the county may recoup the "actual administrative costs . . . incurred in booking or otherwise processing arrested persons," subject to "the defendant's ability to pay." (Gov. Code, § 29550.2, subds. (a) & (c); see *People v. Rivera* (1998) 65 Cal.App.4th 705.)

7

Here, as defendant claims, there is no evidence in the record about exactly how the county determined its administrative costs for booking and classifying him. Defendant, however, accepted as appropriate the amount imposed. Neither he nor his attorney objected to the amount of the fine.

This court has previously held that if a defendant does not object in the trial court to the imposition of a fee or fine, the issue is forfeited. (*People v. Crittle* (2007) 154 Cal.App.4th 368, 371 [crime prevention fine]; *People v. Hodges* (1999) 70 Cal.App.4th 1348, 1357 [jail booking fee]; *People v. Gibson* (1994) 27 Cal.App.4th 1466, 1467, 1468-1469 [restitution fine].) We have applied the forfeiture rule even when the defendant claims on appeal that there is insufficient evidence to support the imposition of the fine or fee. (*People v. Gibson, supra*, 27 Cal.App.4th at pp. 1467-1469.)

Defendant claims that the issue of the sufficiency of the evidence to support his ability to pay the fees is not forfeited, citing *People v. Pacheco* (2010) 187 Cal.App.4th 1392 (*Pacheco*). That case struck a probation supervision fee where there was "no evidence in the record that anyone . . . made a determination of [the defendant's] ability to pay the $64 per month probation supervision fee" and where "the statutory procedure provided at [Penal Code] section 1203.1b for a determination of [the defendant's] ability to pay probation related costs was not followed." (*Pacheco, supra*, 187 Cal.App.4th at p. 1401.) *Pacheco* held that the defendant's challenge to the sufficiency of the evidence supporting the probation supervision fee was not forfeited on appeal by his failure to assert the same in the trial court. (*Id*. at p. 1397.)

The Supreme Court disapproved *Pacheco* in *People v. McCullough* (2013) 56 Cal.4th 589 at page 599. The court held that the defendant forfeited his challenge to the sufficiency of the evidence supporting the finding that he had the ability to pay a jail booking fee by failing to object in the trial court. (*People v. McCullough, supra,* at pp. 591, 598.) "Defendant may not 'transform . . . a factual claim into a legal one by asserting the record's deficiency as a legal error.' [Citation.] By 'failing to object on the

8

basis of his [ability] to pay,' defendant forfeits both his claim of factual error and the dependent claim challenging 'the adequacy of the record on that point.' [Citations.]" (*Id*. at p. 597.) "[A] defendant who does nothing to put at issue the propriety of imposition of a booking fee forfeits the right to challenge the sufficiency of the evidence to support imposition of the booking fee on appeal, in the same way that a defendant who goes to trial forfeits his challenge to the propriety of venue by not timely challenging it." (*Id*. at p. 598.)

Accordingly, defendant's contention that the booking and classification fees must be reversed is without merit.

IV

*Restitution Fine*

Defendant contends that the trial court improperly imposed two restitution fines. The Attorney General asserts that there was only one restitution fine imposed pursuant to Penal Code section 1202.4, but the trial court failed to compute properly the suspended restitution fine pursuant to Penal Code section 1202.45. The Attorney General has the better argument.

"In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record." (Pen. Code, § 1202.4, subd. (b).)

At sentencing, the trial court made the following statements with regard to a restitution fine:

"It is . . . the judgment and sentence of this Court that the defendant pay a restitution fine of $1,800 pursuant to Penal Code Section 1202.4, payable forthwith or as provided by Penal Code Section 2085.5.

"Pursuant to Penal Code Section 1202.45 the Court is imposing an additional restitution fine in the same amount as that just imposed. Payment of this fine is

9

suspended, and will remain suspended unless defendant's parole is revoked.  [¶] . . . [¶]

"With regard to Count 2, the defendant shall pay a restitution fine pursuant to Penal Code Section 1202.4 in the amount of $100, payable through the court's installment process."

Defendant argues that imposing more than one restitution fine is an unauthorized sentence.  For this proposition, he cites *People v. Ferris* (2000) 82 Cal.App.4th 1272, at pages 1276-1277.  *Ferris*, however, involved a different situation.  In that case, the trial court sentenced the defendant for two cases in one unified proceeding and imposed the maximum $10,000 restitution fine in each case.  The court held that, under such circumstances, the trial court could not impose a separate restitution fines for each case. (*Ibid*.)  The court stated:  "The provisions of both [Penal Code] section 1202.4, subdivision (b) and [Penal Code] section 1202.45 apply 'in *every case* where a person is convicted of a crime.'  (Italics added.)  Those statutes do not specify whether the phrase 'every case' means every separately charged and numbered case or every jointly tried case. . . .  We conclude the phrase 'every case' in [Penal Code] sections 1202.4, subdivision (b) and 1202.45 includes a jointly tried case although it involves charges in separately filed informations."  (*People v. Ferris, supra,* at p. 1277.)

The proceedings in this case were never separate cases but instead just one. Although the trial court stated the amount of the restitution as to each count, the restitution fine for the *case* was the total of the stated amounts for each count.  In other words, the trial court imposed only one restitution fine.

Therefore, defendant's contention that the sentence with regard to the restitution fine was unauthorized is without merit.  However, the sentence was unauthorized in one other aspect.

10

Penal Code section 1202.45 requires the court to "assess an additional parole revocation restitution fine in the same amount as that imposed pursuant to subdivision (b) of [Penal Code] Section 1202.4 . . . ."

To the extent that the restitution fine pursuant to Penal Code section 1202.45 was not "in the same amount as that imposed pursuant to subdivision (b) of [Penal Code] Section 1202.4," the sentence was unauthorized. The total amount of the restitution fine under Penal Code section 1202.4 was $1,900, but the amount of the restitution fine imposed under Penal Code section 1202.45 was $1,800.

We must correct an unauthorized sentence (see *People v. Terrell* (1999) 69 Cal.App.4th 1246, 1255-1256); therefore, we must modify the restitution fine under Penal Code section 1202.45 to be equal to the restitution fine under Penal Code section 1202.4.

DISPOSITION

The judgment is modified by amending the amount of the suspended restitution fine under Penal Code section 1202.45 to $1,900. As modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment and send it to the Department of Corrections and Rehabilitation.


                                        NICHOLSON          , Acting P. J.



We concur:



        BUTZ              , J.



        DUARTE          , J.

11