Filed 8/26/20  P. v. Jones CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JEREMIAH LAMAR JONES et al.,<br><br>    Defendants and Appellants. | B294348<br><br>(Los Angeles County<br> Super. Ct. No. MA072186) |

APPEAL from the judgment of the Superior Court of Los Angeles County.  Daviann L. Mitchell, Judge.  Affirmed in part; remanded to correct sentencing errors.

Valerie G. Wass, under appointment by the Court of Appeal, for Defendant and Appellant Jeremiah Lamar Jones.

Jeralyn Keller, under appointment by the Court of Appeal, for Defendant and Appellant Davion Keshaun Hawkins.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendants and appellants Jeremiah Lamar Jones and Davion Keshaun Hawkins appeal from their convictions by jury of multiple counts of attempted robbery and assault with a firearm. Defendants both argue there is insufficient evidence supporting their convictions as aiders and abettors in two attempted robbery incidents that occurred on the same evening at two fast food restaurants in the city of Lancaster. Defendant Hawkins also raises claims of evidentiary error and prosecutorial misconduct. Both defendants further contend the trial court made various sentencing errors.

We conclude the one-year enhancement pursuant to Penal Code section 667.5, subdivision (b) must be stricken from defendant Jones's judgment of conviction, and the gang enhancement pursuant to section 186.22 must be stricken as to all three of defendant Hawkins's attempted robbery convictions. We also find the amount of certain mandatory fees must be corrected, as well as several clerical errors in Hawkins's abstract of judgment. We otherwise affirm the judgments of conviction as to both defendants.

## FACTUAL AND PROCEDURAL BACKGROUND

Hawkins and Jones were charged by amended information with multiple felonies along with a third defendant, Delvon Foldgers. Just before jury selection, Foldgers entered into a plea agreement with the prosecution. He is not a party to this appeal. The case proceeded to trial in October 2018 as against Hawkins and Jones before separate juries on the following charges: attempted second degree robbery of Miguel E. (Pen. Code, § 211, § 664; count 13); attempted second degree robbery of Matthew M. (§ 211, § 664; count 14); assault with a semiautomatic firearm of Miguel E. (§ 245, subd. (b); count 15); assault with a semiautomatic firearm of Matthew M. (§ 245, subd. (b); count 16); attempted second degree robbery of Yessenia M. (§ 211, § 664; count 17); attempted second

degree robbery of Blanca S. (§ 211, § 664; count 18); attempted second degree robbery of Claudia B. (§ 211, § 664; count 19); assault with a semiautomatic firearm of Yessenia M. (§ 245, subd. (b); count 20); assault with a semiautomatic firearm of Blanca S. (§ 245, subd. (b); count 21); and, assault with a semiautomatic firearm of Claudia B. (§ 245, subd. (b); count 22).

It was further alleged as to all counts that the offenses were committed for the benefit of, at the direction of, or in association with the Mona Park Crips, a criminal street gang, within the meaning of Penal Code section 186.22. As to the attempted robbery counts, it was also alleged that a principal personally used a firearm in the commission of the offenses. (§ 12022.53, subds. (b) & (e).) As to Jones, a prior conviction allegation (carrying a concealed weapon) within the meaning of section 667.5, subdivision (b) was alleged.

The testimony at trial established the following facts material to our discussion.

On the evening of September 7, 2017, Miguel[1] was working a shift with his coworker, Matthew, at a Subway restaurant in the city of Lancaster. Sometime after 7:30 p.m., Miguel walked from the back room into the main dining area of the restaurant just as a male, wearing a hat and black T-shirt walked in. Miguel was a few feet from the counter where Matthew was standing by the cash register. The man immediately pulled a gun from his shorts and pointed it at Miguel. Miguel saw the man "cock" the gun. Fearing he would be shot, Miguel fled to the back room, as did Matthew. Miguel and Matthew called 911 using Miguel's cell phone. The 911

---

[1] We refer to the victims and witnesses only by the first names to protect their identity.

call was played for the jury. Miguel identified Foldgers from a six-pack photographic lineup (six-pack) as the man who pointed the gun at him.

About a mile away, Claudia was working at the Louisiana Fried Chicken restaurant with two coworkers, Yessenia and Blanca. Shortly before 8:00 p.m., Claudia was in the main room of the restaurant and Yessenia was at the cash register behind the counter. Claudia saw a male dressed all in black and wearing a hat enter the restaurant. He was acting "aggressively." He ran towards Yessenia, jumped over the counter and held a gun to Yessenia's head. Claudia was frightened and ran into the back room. She later identified Foldgers from a six-pack as the man who entered the restaurant with a gun.

Blanca recalled being on her break in the back room when she heard Yessenia call out to her from the front of the restaurant. Yessenia sounded nervous so Blanca immediately walked up front. Claudia was already there. Blanca saw a man behind the counter, grabbing Yessenia by the neck and holding a gun to her head. When the man saw Blanca, he said "give me the fucken money." Blanca later identified Foldgers in a six-pack as the man with the gun.

Yessenia also testified that a man dressed in black entered the restaurant and came directly at her pointing a gun. He pulled something back on the gun which she later learned was called "racking the gun." The man then jumped over the counter and demanded she give him the money. He yelled at Claudia and Blanca to stay back or he would shoot, or words to that effect. Yessenia tried to open the register but the man had the gun pointed at her head and kept shoving her so she was unable to open it. Yessenia testified she was scared but wanted to give him the money hoping he would leave. The man seemed frustrated at Yessenia's

4

inability to open the register, pushed her down and fled.  Yessenia called 911 after he left.  The 911 call was played for the jury.

Surveillance video recovered from the two restaurants as well as other nearby businesses was played for the jury.  The surveillance tapes showed a silver sedan with a black hood, black rims and black right fender driving near the Subway just before the incident.  Footage from inside the Subway showed Foldgers entering the restaurant and the incident unfolding in a manner substantially similar to Miguel's testimony of the event.  Additional footage showed the same car, approximately 15 minutes later, driving slowly in the parking lot in front of the Louisiana Fried Chicken restaurant and eventually backing into a parking space.  Foldgers and Hawkins got out of the car and walked back and forth in front of the store fronts for a few minutes.  During this time, Hawkins was talking almost continually on a cell phone.  Footage from inside the restaurant showed Foldgers eventually walking into the restaurant, leaping over the counter and holding a gun to Yessenia's head substantially consistent with her testimony and that of her coworkers.  Finally, surveillance video from inside a nearby liquor store about 30 to 40 minutes thereafter showed Jones, Hawkins and Foldgers arriving together, making a few purchases and then leaving together in the same silver and black sedan.

Three days after the attempted robberies, deputy sheriff Alberto Rodriguez was on patrol in Lancaster.  He saw a silver Honda with a black hood, black rims and a black right front fender that matched the description of the vehicle suspected of being involved in the robberies and pulled it over.  Jones was driving.  Candace C. (his longtime girlfriend) and his sister were passengers in the car.  Deputy Rodriguez arrested Jones on an outstanding warrant for driving on a suspended license.  He allowed Candace and Jones's sister to leave with the Honda and drive home.

Jones's recorded interview with Detective Daniel Ament was played for his jury (the blue jury). Jones admitted the Honda belonged to him and his girlfriend. He said the two-tone silver and black paint was the result of putting on replacement parts after a tire blew off and damaged the car. Jones denied being a gang member and denied being at the Subway on the day of the incident. However, when told the Honda had been captured on surveillance video, Jones eventually acknowledged the distinctive car in the video was his and admitted he had been driving in the alley near the Subway. Jones said he and Hawkins, who is his half brother, were out looking for the home of Hawkins's girlfriend. Hawkins got out of the car at one point but just to urinate. Jones also admitted having gone to the Louisiana Fried Chicken restaurant that day but not at night when the robbery happened. Detective Ament and his partner explained that surveillance footage showed the Honda was at the scene and two people getting out of the car. Jones then said they had picked up one of Hawkins's friends (Foldgers) and those two did get out of the car at some point but just to buy cigarettes. Jones denied knowing Foldgers. He identified Hawkins as the person depicted in the surveillance footage talking on a cell phone.

Candace testified that in 2017 she and Jones lived together with her children north of Lancaster in California City. At the time, she owned a Honda Civic that Jones sometimes drove. The Honda was silver with a black hood, black rims and a black right front fender. She said Jones was at home with her on the night of September 7, 2017. Candace denied telling Detective Ament that Jones left the house that night in the Honda to visit his sister and did not come home until around 11:30 p.m.

The parties stipulated to the fact the Mona Park Crips are a criminal street gang and its primary activities include robberies, attempted robberies, and assaults with and without firearms.

Defendants did not concede their membership in the gang. Detective Laura Perales testified as the prosecution's gang expert. Among other things, she testified to her opinion that defendants were active members of the Mona Park Crips. Detective Perales identified various photographs posted on Jones's and Hawkins's Facebook pages, including pictures of the two of them posing with Foldgers and throwing gang signs. Another posted photograph and comment on Hawkins's page included the words "Mona for Life" and "2$$." Detective Perales stated her opinion that Mona for Life meant Hawkins was claiming his gang for life and 2$$ represented 211, the Penal Code section for robbery.

Deputy Steven Crosby testified that in February 2016, a little over a year and a half before the charged incidents, he pulled Hawkins over for a traffic stop in the city of Lancaster. Hawkins was wearing two blue bandanas tied together around his neck. He told Deputy Crosby he was from Mona Park in Compton. Foldgers was a passenger in the vehicle. A loaded semiautomatic firearm was found in the front passenger side of the vehicle within reach of Hawkins who was driving. When asked about the gun, Hawkins denied knowledge of it but later admitted it was his. Deputy Crosby said Hawkins told Foldgers he should have taken responsibility for the gun and that "they were going to have words" about it. According to Deputy Crosby, Foldgers "appeared intimidated" by Hawkins.

The jury convicted Jones on three counts of attempted second degree robbery (counts 13, 14 & 17) and two counts of assault with a firearm (counts 15 & 20) and acquitted him of the remaining counts (counts 16, 18, 19, 21 & 22). The jury found not true all of the special allegations. In a bifurcated proceeding, Jones admitted his prior conviction for carrying a concealed weapon.

The court sentenced Jones to state prison for an aggregate sentence of 12 years eight months calculated as follows: a nine-year high term for assault with a firearm on count 15 (Miguel), plus a consecutive one-year prison prior; a consecutive eight-month term (one-third the midterm) for attempted robbery on count 14 (Matthew); and a consecutive two-year term (one-third the midterm) for assault with a semiautomatic firearm on count 20 (Yessenia). The court imposed and stayed sentence on counts 13 and 17 and awarded Jones 745 days of presentence custody credits.

The court imposed a restitution fine in the amount of $3,600 on the base term and imposed and stayed a parole revocation fine in the same amount. The court further imposed a criminal conviction fee of $30 and a court security fee of $40. The court stated that all fees should be collected from prison earnings with restitution being paid first. The abstract of judgment states a $200 court operations fee and $150 criminal conviction fee were imposed.

The jury acquitted Hawkins of the charges arising from the incident at the Subway and found him guilty of all six charges arising from the incident at the Louisiana Fried Chicken restaurant (counts 17 through 22). The jury found true the gang allegation as to all six counts and, as to the three attempted robbery counts, found true the allegation that a principal used a firearm in the commission of the offenses.

The court sentenced Hawkins to state prison for an aggregate sentence of 22 years calculated as follows: a nine-year high term for assault with a firearm on count 20 (Yessenia), plus a consecutive five-year term for the gang enhancement; and, consecutive four-year terms for attempted robbery on counts 18 and 19 (Blanca and Claudia). The court imposed and stayed sentence on counts 17, 21 and 22 and awarded defendant 504 days of presentence custody credits.

8

Hawkins stipulated to a direct restitution award to Yesenia in the amount of $1,416.42.  The court imposed a restitution fine in the amount of $6,600 on the base term and imposed and stayed a parole revocation fine in the same amount.  The court ordered "a criminal conviction fee of $30" and "a court security fee of $40" and stated that all fees should be collected from prison earnings with restitution being paid first.  The abstract of judgment states a $120 court operations fee and a $90 criminal conviction fee were imposed.

This appeal followed.

## DISCUSSION

### 1.    The Substantial Evidence Claims

Defendants each raise a substantial evidence argument. Both defendants were found guilty as aiders and abettors of codefendant Foldgers.  " ' "Whether [a] defendant aided and abetted the crime is a question of fact, and on appeal all conflicts in the evidence and reasonable inferences must be resolved in favor of the judgment." ' " (*People v. Campbell* (1994) 25 Cal.App.4th 402, 409 (*Campbell*).) Reviewing the record according to this familiar standard, we conclude there is ample evidence supporting the judgments of conviction as to both defendants.

### a.    Defendant Jones—counts 13 & 14

Jones concedes the evidence is sufficient to support a conviction for aiding and abetting the assaults with a firearm committed by Foldgers at the Subway restaurant.  He argues however that the evidence does not rise to the level of showing he assisted an attempted robbery of either Subway employee.  Jones contends there is no credible evidence Foldgers committed anything more than an assault by brandishing his gun inside the restaurant because he never fired the gun, never demanded or otherwise attempted to take any money or property from the Subway

9

employees, never admitted his intent was to rob the restaurant and he fled the scene immediately after completing the assaults. We are not persuaded.

There was ample evidence codefendant Foldgers attempted to rob the Subway restaurant. To be guilty of an attempt, the perpetrator must have the requisite intent and take a direct, but ineffectual act to commit the offense. (*People v. Anderson* (1934) 1 Cal.2d 687, 689-690 [a direct step in committing the offense is established by any act or acts "which would end in the consummation of the particular offense unless frustrated by extraneous circumstances"].) "[O]ther than forming the requisite criminal intent, a defendant *need not commit an element of the underlying offense.*" (*People v. Medina* (2007) 41 Cal.4th 685, 694, italics added.) Neither a completed assault nor a completed theft is necessary to support a conviction for attempted robbery. (*Id.* at pp. 694-695.)

Foldgers entered the Subway restaurant brandishing a firearm and approached Miguel who was standing just a few feet from the counter and the cash register. When Miguel immediately fled to a back room along with his coworker, Foldgers then fled the scene. This evidence and the reasonable inferences therefrom, as well as the gang evidence from Detective Perales, supports the jury's determination that Foldgers took a direct step in attempting the robbery but fled after he was thwarted in accessing the register when the employees immediately ran and hid in the back room. (See, e.g., *People v. Vizcarra* (1980) 110 Cal.App.3d 858, 862 [evidence showing the defendant approached a liquor store carrying a rifle, tried to hide on a pathway adjacent to the store when observed by a customer, and then fled without entering the store deemed sufficient acts to support conviction for attempted robbery].)

10

### b.    Defendant Hawkins—counts 17 through 22

Hawkins argues there was insufficient evidence he aided and abetted Foldgers's crimes at the Louisiana Fried Chicken restaurant. Hawkins contends that mere presence at the scene or membership in a gang are insufficient to support aiding and abetting liability.

We have no quarrel with the general proposition that mere presence at the scene of a crime, failure to prevent a crime or gang membership generally are insufficient factors, standing alone, to support aiding and abetting liability. (See generally, *People v. Nguyen* (2015) 61 Cal.4th 1015, 1055 (*Nguyen*).) However, Hawkins mischaracterizes the evidence presented below.

To be held liable as an aider and abettor, one need not personally participate in the elements of the crime. (*People v. Morante* (1999) 20 Cal.4th 403, 433.) It is sufficient if, knowing of the direct perpetrator's unlawful intent, one assists or encourages the commission of the crime. (*Ibid.*) " 'Intent is rarely susceptible of direct proof and usually must be inferred from the facts and circumstances surrounding the offense.' " (*People v. Johnson* (2019) 32 Cal.App.5th 26, 58 (*Johnson*).) And, it is well established that presence at the scene, companionship, and conduct before and after the offense are relevant factors in resolving the question of aiding and abetting liability. (*Campbell*, *supra*, 25 Cal.App.4th at p. 409 [presence near one who robs victims in order to intimidate, divert suspicion or watch out for others "is a textbook example of aiding and abetting"].)

Here, all of these factors were present. Hawkins was captured in surveillance video arriving with Foldgers and walking back and forth, looking over his shoulder and talking on a cell phone for several minutes before Foldgers entered the restaurant— actions which could reasonably be construed as consistent with

11

acting as a lookout or to divert suspicion. The evidence also established that Hawkins left with Foldgers in the same Honda in which they arrived immediately after the crimes were committed. Additional video footage shows Hawkins a short time later, still in the company of Foldgers and Jones, as they arrived at a liquor store to make some purchases. This evidence was corroborated by the Facebook evidence and other gang evidence attested to by Detective Perales that showed an ongoing relationship between Hawkins, Jones and Foldgers and their membership in a gang in which it was stipulated that the commission of robberies and assaults were their primary activities. The evidence, taken in its totality, was sufficient to support the jury's determination that Hawkins aided and abetted Foldgers's crimes at the Louisiana Fried Chicken restaurant. (See, e.g., *Nguyen*, *supra*, 61 Cal.4th at p. 1055 [the defendant's presence in a car with fellow gang members, staring at rival gang members as they drove by shortly before another vehicle occupant opened fire, and testimony from gang expert about ongoing gang feud sufficient to support aiding and abetting liability for attempted murder]; *Johnson, supra*, 32 Cal.App.5th at pp. 59-60 [video footage of person serving as a lookout who matched the defendant's physical characteristics along with cell phone records showing involvement with the perpetrator at the relevant time ample evidence supporting conviction for murder as aider and abettor].)

## 2.    Admission of the Uncharged Prior Act

Hawkins contends the trial court committed evidentiary error in admitting, pursuant to Evidence Code section 1101, subdivision (b), the testimony of Deputy Crosby about the 2016 traffic stop that occurred a little more than a year and a half before the charged incidents. We disagree.

Evidence Code section 1101, subdivision (b) provides in relevant part that "[n]othing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act." A trial court's ruling admitting evidence of a prior uncharged act under section 1101, "being essentially a determination of relevance, is reviewed for abuse of discretion." (*People v. Kipp* (1998) 18 Cal.4th 349, 369.)

The trial court found Deputy Crosby's testimony of the 2016 traffic stop relevant to disprove any claim by Hawkins he mistakenly did not know Foldgers had a gun or was intending to rob the Louisiana Fried Chicken restaurant. The court explained it was relevant, at a minimum, to the gang allegation and the People's theory of the case that the defendants were working "in association with one another." The court tailored the information to which the deputy could attest, prohibiting discussion of the fact Hawkins was arrested following the traffic stop and there was a child in the car.

Knowledge and absence of mistake or innocent intent " 'are very closely intertwined.' " (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 242.) " '[T]o establish knowledge when that element is akin to absence of mistake, the uncharged events must be sufficiently similar to the circumstances of the charged offense to support the inference that what defendant learned from the prior experience provided the relevant knowledge in the current offense.' " (*People v. Felix* (2019) 41 Cal.App.5th 177, 186.) Hawkins argues there was no similarity here.

The court's ruling admitting Deputy Crosby's testimony was well within its broad discretion. The evidence was relevant to show Hawkins's relationship with Foldgers and tied into the testimony by

13

the prosecution's gang expert, Detective Perales. The gang evidence in turn was relevant to disprove any claimed innocent intent by Hawkins as to the charged offenses or lack of knowledge as to what was planned when the three arrived at the restaurant that night. The probative value of Deputy Crosby's testimony was enhanced because it "emanate[d] from a source independent of evidence of the charged offense[s]." (*People v. Tran* (2011) 51 Cal.4th 1040, 1047.) And, the potential for prejudice was decreased because his testimony about that prior incident was not "more inflammatory than the testimony concerning the charged offense[s]." (*Ibid.*)

In any event, even assuming it was error for the evidence to be admitted for this limited purpose, it was harmless by any standard. Any potential prejudice was mitigated by the court's limiting instruction to the jury. The jury was told the prosecution had the burden of proof as to the evidence of the prior uncharged incident and that if it did not meet that burden, the evidence was to be disregarded entirely; that the jury may, but was not required to, consider the evidence "for the limited purpose of deciding whether: [¶] The defendant's alleged actions were not the result of mistake or accident"; that the evidence could not be considered for any other purpose; that the jury must not conclude from the evidence that defendant had a bad character or was predisposed to commit crimes; and that if the jury concluded defendant had engaged in the uncharged act, it was not sufficient to prove defendant guilty of any of the charged offenses or special allegations. We presume the jury followed the court's instruction. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1234.)

Hawkins has not demonstrated any undue prejudice from the admission of Deputy Crosby's testimony. His testimony was relatively brief and the facts pertaining to the traffic stop were not likely to provoke an emotional, irrational response from the jury.

14

(*People v. Doolin* (2009) 45 Cal.4th 390, 439 (*Doolin*) [evidence should be excluded as unduly prejudicial only when it is the type that will " 'inflame the emotions of the jury' "].)

**3.    Prosecutorial Error During Closing Argument**

Hawkins raises three claims of prosecutorial misconduct or error.  None of the three challenged acts was objected to in the trial court and any appellate challenge was therefore forfeited.  "It is well settled that making a *timely and specific* objection at trial, and requesting the jury be admonished . . . is a necessary prerequisite to preserve a claim of prosecutorial misconduct for appeal."  (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1328, italics added; accord, *People v. Davenport* (1995) 11 Cal.4th 1171, 1209.)  Hawkins argues however, that several courts have held a prosecutor's conduct that inflames the passions and prejudices of the jury constitutes the sort of misconduct that is not curable by admonition, thus eliminating the need for defense objection to preserve the issue for appeal.  (See, e.g., *People v. McGreen* (1980) 107 Cal.App.3d 504, 519.)  We are not persuaded that occurred here.

All of the alleged misconduct occurred during closing argument.  Our Supreme Court has explained that we must consider the prosecutor's argument as a whole and in context. (*People v. Lucas* (1995) 12 Cal.4th 415, 475.)  Judged through such a lens, the prosecutor's remarks here did not encourage the jury to act on their passions or prejudices and disregard the evidence.  (See, e.g., *People v. Cornwell* (2005) 37 Cal.4th 50, 92, overruled in part on other grounds in *Doolin, supra*, 45 Cal.4th at p. 421, fn. 22 ["the prosecutor's argument did not urge the members of the jury to act on the basis of their fear of chaos and crime in the community, but to act with an understanding of the importance of law in the abstract"]; see also *U.S. v. Monaghan* (D.C. Cir. 1984) 741 F.2d 1434, 1442 ["a request that the jury 'condemn' an accused for

15

engaging in illegal activity is not constitutionally infirm, so long as it is not calculated to excite prejudice or passion"].) Moreover, nothing in the record suggests that if Hawkins had objected to any of the challenged statements during trial, his objections would have been futile, or that an admonition would have been insufficient to cure any alleged harm. (*People v. Hill* (1998) 17 Cal.4th 800, 820.) The claims were therefore forfeited.

Hawkins asserts, with little argument, that if we conclude his claim was forfeited, then his trial counsel was ineffective. But, a defendant's burden to establish ineffective assistance on direct appeal is stringent. A defendant "must show both that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates, and that it is reasonably probable a more favorable determination would have resulted in the absence of counsel's failings." (*People v. Cudjo* (1993) 6 Cal.4th 585, 623, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687-696.)

Here, defense counsel could have had any number of valid reasons for choosing not to object during the prosecutor's argument. "[W]here the appellate record does not reveal whether counsel had a legitimate reason for a litigation choice, we generally reserve consideration of any ineffective assistance claim for possible proceedings on petition for writ of habeas corpus." (*People v. Snow* (2003) 30 Cal.4th 43, 95 (*Snow*); accord, *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.)

4.    **The Sentencing Issues**

      a.    **Defendant Jones—the prison prior**

Senate Bill 136 (2019-2020 Reg. Sess.) was passed during the pendency of this appeal, amending Penal Code section 667.5. The parties agree it applies retroactively and that Jones is entitled to the benefit of the amendments to section 667.5 which became effective January 1, 2020. The parties further agree Jones's prior

16

conviction is not an enumerated sexually violent offense as required by the amended statute and therefore the one-year prison prior must be stricken. We agree with the parties. The one-year enhancement shall be stricken from the judgment of conviction.

**b.    Defendant Hawkins—Senate Bill 620**

Senate Bill 620 (2017-2018 Reg. Sess.) amending Penal Code section 12022.53 became effective January 1, 2018, more than a year *before* Hawkins was sentenced in January 2019. Defendant concedes his opening brief error in asserting the amendatory provision became effective in January 2019. Defendant nonetheless argues remand for resentencing is still appropriate because there is nothing in the record to indicate the trial court knew of its discretion to strike the firearm enhancement but declined to do.

We are not persuaded. "On appeal, we presume that the trial court followed established law and thus properly exercised its discretion in sentencing a criminal defendant." (*People v. Weddington* (2016) 246 Cal.App.4th 468, 492.) Penal Code section 12022.53 is not an obscure statute. Firearm enhancements are a common aspect of many sentencing hearings. There is no basis in the record to infer the court was unaware of the change in the law over a year after it became effective.

**c.    Defendant Hawkins—the gang enhancement and clerical errors in the abstract of judgment (counts 17, 18 & 19)**

Hawkins contends the court erred in imposing a gang enhancement in addition to a firearm use enhancement on counts 17, 18 and 19. As respondent concedes, defendant is correct.

Because Hawkins was *not* found by the jury to have *personally* used a firearm but only that he aided and abetted a principal who used a firearm in the commission of the attempted robberies, the court could only impose an enhancement for the

17

firearm use.  Even though the jury found the gang allegation true, the imposition of a gang enhancement was not authorized in this instance.  "A defendant who *personally* uses or discharges a firearm in the commission of a gang-related offense is subject to *both* the increased punishment provided for in [Penal Code] section 186.22 *and* the increased punishment provided for in section 12022.53.  In contrast, when another principal in the offense uses or discharges a firearm but the defendant does not, there is no imposition of an 'enhancement for participation in a criminal street gang . . . in addition to an enhancement imposed pursuant to' section 12022.53.' (§ 12022.53(e)(2).)"  (*People v. Brookfield* (2009) 47 Cal.4th 583, 590 (*Brookfield*).)

During the court's oral pronouncement of judgment, the court mistakenly imposed a gang enhancement on counts 17, 18 and 19.  The court also made a calculation error on counts 18 and 19.  The court clearly imposed a total term of four years on each count, but then stated the sentence consisted of an eight-month term on the offense, plus one year four months for the gang allegation and three years four months for the firearm use which amounts to a total term of five years four months.  The minute order memorializing the sentencing hearing fails to accurately reflect the court's oral order in numerous respects, including stating that the terms on counts 18 and 19 were one-third of an unspecified 12-year midterm.  The abstract of judgment also contains errors, reciting the erroneous gang enhancement on count 17, but omitting it from counts 18 and 19.  All of these errors require correction.

According to the statutory language and *Brookfield*, the court's imposition of the gang enhancement on counts 17, 18 and 19 was unauthorized and we therefore reverse and strike those enhancements from the judgment.  The minute order memorializing the court's pronouncement of judgment as well as the abstract of

18

judgment must be corrected to accurately reflect the lawful sentence. The sentence on counts 17, 18 and 19 must not include any gang enhancement. The sentence on counts 18 and 19 must reflect the court's intended sentence of four years on each count consisting of a consecutive eight-month term for the offense (one-third of two-year midterm), plus a consecutive term of three years four months for the firearm enhancement (one-third of 10-year term pursuant to Pen. Code, § 12022.53, subd. (e)).

### d. Both defendants—imposition of fines and fees

Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), Jones and Hawkins both contend the trial court's imposition of a court security fee, a criminal conviction fee, and a restitution fine on each count without a finding of ability to pay violated their constitutional rights. Defendants concede they did not object to the imposition of these fines and fees on any grounds in the trial court.

Defendants have forfeited this contention. (*People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153-1155 (*Frandsen*) [finding forfeiture where no objection raised in trial court to imposition of court operation assessment, criminal conviction assessment and restitution fine]; accord, *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1032-1033; *People v. Bipialaka* (2019) 34 Cal.App.5th 455, 464; see also *People v. Avila* (2009) 46 Cal.4th 680, 729 [finding forfeiture where the defendant failed to object to imposition of restitution fine under Pen. Code, former § 1202.4 based on inability to pay].)

The court imposed the restitution fines above the statutory minimum. Under subdivision (c) of Penal Code section 1202.4, both Jones and Hawkins had notice of the right to argue inability to pay in opposition to the imposition of any restitution fine over the statutory minimum of $300. Defendants did not do so. Defendants

were in the best position to know whether they had the ability to pay any fines or fees and it was incumbent upon them to timely raise the issue with the court.

Defendants nonetheless urge us to reject *Frandsen* and find the contention has not been forfeited, citing *People v. Castellano* (2019) 33 Cal.App.5th 485, 489 and *People v. Jones* (2019) 36 Cal.App.5th 1028, 1031-1034.  We believe *Frandsen* to be the better reasoned decision and conclude there is no basis for excusing defendants' forfeiture on this issue.

In any event, nothing in the record supports defendants' contention the imposition of the fines and fees was fundamentally unfair or violated their constitutional right to due process as found in *Dueñas*.  The fines and fees were imposed pursuant to clear statutory authority.  *Dueñas* not only involved unique factual circumstances not applicable here, but the validity of its analytical framework has been questioned by numerous courts:  see, e.g., *People v. Allen* (2019) 41 Cal.App.5th 312, 326-329, review denied January 2, 2020; *People v. Kingston* (2019) 41 Cal.App.5th 272, 279-282; *People v. Hicks* (2019) 40 Cal.App.5th 320, 326-329, review granted November 26, 2019, S258946; *People v. Caceres* (2019) 39 Cal.App.5th 917, 926-929, review denied January 2, 2020.

Defendants were represented by counsel at the sentencing hearing and in the absence of a timely objection, the trial court could reasonably presume the fines and fees would be paid out of their future prison wages.  (See, e.g., *People v. Douglas* (1995) 39 Cal.App.4th 1385, 1397; *People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837; *People v. Gentry* (1994) 28 Cal.App.4th 1374, 1376-1377; *People v. Frye* (1994) 21 Cal.App.4th 1483, 1487.)

To the extent defendants argue their respective trial attorneys were ineffective for failing to raise an objection based on

ability to pay, we are unable to resolve that issue on direct appeal. (*Snow*, *supra*, 30 Cal.4th at p. 95.)

### e. Both defendants—failure to impose mandatory fees and clerical errors in the abstracts of judgment

As to both Jones and Hawkins, the court imposed only one $40 court operations fee and one $30 criminal conviction fee, instead of imposing each fee on each count in accordance with the mandatory statutory language. (Pen. Code, § 1465.8; Gov. Code, § 70373.) Jones was convicted on five felony counts and therefore the required court operations fee is $200 with a criminal conviction fee of $150. The abstract of judgment does not have to be amended, however, because it states the correct $200 court operations fee and $150 criminal conviction fee.

The abstract of judgment for Hawkins, however, does not state the correct court operations fee and criminal conviction fee. The failure of a sentencing court to impose a mandatory fine or fee results in an unauthorized sentence that may be corrected on appeal without objection made in the trial court. (See, e.g., *People v. Terrell* (1999) 69 Cal.App.4th 1246, 1256 [failure to impose mandatory parole revocation fine in amount equal to restitution fine may be corrected on appeal].)

Hawkins was convicted on six felony counts and the required court operations fee is $240 with a criminal conviction fee of $180. Hawkins's abstract which erroneously states fees of $120 and $90, respectively, shall be corrected to reflect the statutorily required amounts.

### 5. Cumulative Error

Hawkins argues there was cumulative prejudice from the combined trial court errors. "There can be no cumulative error if the challenged rulings were not erroneous." (*People v. Sedillo*

(2015) 235 Cal.App.4th 1037, 1068; see also *People v. Bradford* (1997) 15 Cal.4th 1229, 1382 [finding that to the extent any errors occurred, they were minor and "[e]ven considered collectively" they did not result in prejudice].) As explained above, Hawkins has not shown cumulative prejudicial effect.

## DISPOSITION

**Defendant and appellant Jeremiah Lamar Jones:**

The one-year enhancement imposed pursuant to Penal Code section 667.5, subdivision (b) is reversed and stricken from the judgment of conviction. A court operations fee of $40 (Pen. Code, § 1465.8) is imposed as to each of the five felony convictions for a total fee of $200. A criminal conviction fee of $30 (Gov. Code, § 70373) is imposed as to each of the five felony convictions for a total fee of $150. The judgment, as so modified, is affirmed in all other respects.

The superior court is directed to prepare a new abstract of judgment consistent with this opinion and transmit same to the Department of Corrections and Rehabilitation.

**Defendant and appellant Davion Keshaun Hawkins:**

The gang enhancements imposed on counts 17, 18 and 19 pursuant to Penal Code section 186.22 are reversed and stricken from the judgment of conviction. A court operations fee of $40 (Pen. Code, § 1465.8) is imposed as to each of the six felony convictions for a total fee of $240. A criminal conviction fee of $30 (Gov. Code, § 70373) is imposed as to each of the six felony convictions for a total fee of $180. The judgment, as so modified, is affirmed in all other respects.

The superior court is directed to prepare a new sentencing minute order consistent with this opinion, correcting the fees imposed, deleting the gang enhancement on counts 17, 18 and 19, and identifying consecutive sentences on counts 18 and 19 as each

22

consisting of a four-year term (an eight-month term for the offense, one-third of a two-year midterm, plus three years four months, one-third of a 10-year term, for the firearm enhancement).  The superior court is further directed to prepare a new abstract of judgment consistent with this opinion and transmit same to the Department of Corrections and Rehabilitation.


GRIMES, Acting P. J.

WE CONCUR:


STRATTON, J.


WILEY, J.


23